**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

|  |  |
|---|---|
| WILLIAM MARK CUMALANDER, *on behalf of himself and all others similarly situated*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-00176-TRM-CHS |
| BLUECROSS BLUESHIELD OF TENNESSEE, INC., | |
| Defendant. | |

**DEFENDANT BLUECROSS BLUESHIELD OF TENNESSEE, INC.'S MEMORANDUM**
**OF LAW IN SUPPORT OF MOTION TO DISMISS AND**
**MOTION TO STRIKE CLASS ALLEGATIONS**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND......................................................2

    A.   Cumalander's claim for benefits and appeal.................................................2

    B.   Procedural history. ....................................................................................4

III. ARGUMENT ...................................................................................................5

    A.   Legal standard. ..........................................................................................5

    B.   Cumalander's breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) seeks relief that is fully remedied by his denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B). ..........................................................................................6

    C.   Cumalander's disgorgement of profits remedy also fails as a matter of law because Cumalander is only entitled to recover benefits due under the policy. ......8

    D.   The Court should strike Cumalander's class action claims because they depend on questions which are inherently individualized.......................................................10

        1.   Cumalander's complaint does not meet the legal standard for class actions. ............................................................................................10

        2.   Cumalander's class allegations fail as a matter of law because Cumalander fails to identify common issues that support certification. ........................11

    E.   Reprocessing is not available as class-wide remedy...............................................18

        1.   Reprocessing requires individualized inquiries that preclude class-wide resolution...................................................................................................18

        2.   Reprocessing fails to provide "final relief" as required under Rule 23(b)(2). ...................................................................................................20

IV.  CONCLUSION...................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................5

*Berndt v. Cal. Dep't of Corr.*,
  No. C 03-3174 VRW, 2010 WL 2035325 (N.D. Cal. May 19, 2010)....................................17

*Black & Decker Disability Plan v. Nord*,
  538 U.S. 822 (2003).....................................................................................15

*Day v. Humana Ins. Co.*,
  335 F.R.D. 181 (N.D. Ill. 2020)................................................................... *passim*

*Fenwick v. Hartford Life & Accident Ins. Co.*,
  841 F. App'x 847 (6th Cir. 2021) ...............................................................9

*Fotta v. Trustees of United Mine Workers of Am.*,
  319 F.3d 612 (3d Cir. 2003)........................................................................16

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)....................................................................................11

*Gore v. El Paso Energy Corp. Long Term Disability Plan*,
  477 F.3d 833 (6th Cir. 2007) .....................................................................7

*Gulfside Casino P'ship v. Churchill Downs Inc.*,
  861 F. App'x 39 (6th Cir. 2021) .................................................................3

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
  571 U.S. 99 (2013).....................................................................................15

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
  213 F.3d 124 (3d Cir. 2000).......................................................................16

*Jamie S. v. Milwaukee Pub. Sch.*,
  668 F.3d 481 (7th Cir. 2012) ........................................................16, 20, 21

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015).......................................................................13

ii

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
    634 F.3d 883 (7th Cir. 2011) ....................................................................19, 20

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ........................................................................................6

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ........................................................................17

*Papasan v. Allain*,
    478 U.S. 265 (1986) ........................................................................................5

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ........................................................................11

*Rochow v. Life Ins. Co. of N. Am.*,
    780 F.3d 364 (6th Cir. 2015) ....................................................................7, 8, 9

*Romberio v. UnumProvident Corp.*,
    385 F. App'x 423 (6th Cir. 2009) ................................................................16

*Thurman v. Pfizer, Inc.*,
    484 F.3d 855 (6th Cir. 2007) ..........................................................................5

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013) ....................................................................................6, 15

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ..........................................................................6, 7, 9, 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................10, 11, 12, 13

*Wilkins v. Baptist Healthcare Sys., Inc.*,
    150 F.3d 609 (6th Cir. 1998) ..........................................................................7

*Wit v. United Behav. Health*,
    317 F.R.D. 106 (N.D. Cal. 2016) ................................................................18

*Wit v. United Behavioral Health*,
    79 F.4th 1068 (9th Cir. 2023) ..................................................................18, 19

**Statutes**

29 U.S.C. § 1001, *et seq.* ............................................................................................1

29 U.S.C. § 1102(a)(1) ..............................................................................................15

iii

29 U.S.C. § 1132(a)(1)(B) ................................................................................ *passim*

29 U.S.C. § 1132(a)(3) ................................................................................ *passim*

**Rules & Regulations**

Fed. R. Civ. P. 8(a)(2) ................................................................................5

Fed. R. Civ. P. 12(b)(6) ................................................................................1, 5, 21

Fed. R. Civ. P. 23 ................................................................................10, 11, 12, 13

Fed. R. Civ. P. 23(b) ................................................................................1, 19, 20, 21

Fed. R. Civ. P. 23(b)(1) ................................................................................18

Fed. R. Civ. P. 23(b)(2) ................................................................................2, 18, 20

Fed. R. Civ. P. 23(b)(3) ................................................................................18

Fed. R. Civ. P. 23(c)(1)(A) ................................................................................10

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................10

LR 7.1 ................................................................................4

# I.    INTRODUCTION

Defendant BlueCross BlueShield of Tennessee, Inc. ("BCBST") respectfully submits this memorandum of law in support of its motion to dismiss pursuant to Rule 12(b)(6) and motion to strike the class allegations.

Plaintiff Cumalander, acting on behalf of a putative class of plaintiffs, seeks to recover the expenses he incurred for proton beam radiation therapy ("PBRT") to treat his prostate cancer under his health plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Cumalander alleges that BCBST improperly denied his claims for PBRT because they are "experimental, investigational, and/or not medically necessary." Compl. ¶ 2.

The Court should dismiss Cumalander's claim for equitable relief under 29 U.S.C. § 1132(a)(3) in Count II as a matter of law because there is a valid contract covering the issue, which means his damages are limited to the benefits under the contract. Cumalander's request for disgorgement of profits extends beyond the benefits allowed under the contract and is therefore barred as a matter of law. Cumalander's equitable claim is also duplicative of his claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

The Court should strike Cumalander's class action claims because the Complaint does not and cannot satisfy Rule 23(b)'s commonality requirement. The alleged class consists of BCBST members covered under ERISA group health plans who were or will be denied coverage for PBRT to treat their prostate cancer on the grounds their specific treatment was or is experimental, investigational, or not medically necessary for their particular circumstances. Cumalander has failed to plead that all of these policyholders could possibly be joined as members of the same class with a common interest that would lead to a common right of recovery based on the same essential facts. Without such a common nexus, Cumalander fails to plead a valid class action.

1

This is best illustrated by a decision striking class allegations in a lawsuit involving claims for PBRT that is indistinguishable from this case.  *See Day v. Humana Ins. Co.*, 335 F.R.D. 181 (N.D. Ill. 2020).

Finally, Cumalander's request for an order requiring BCBST to "reprocess Plaintiff and Class Members' claims for PBRT to treat prostate cancer in accordance with ERISA" should be dismissed as a matter of law.  Because Cumalander's class claims lack commonality and require individualized inquiries, reprocessing is not available as class-wide remedy.  Cumalander is barred from seeking class-wide reprocessing because reprocessing injunctions require too many individualized determinations of eligibility and medical necessity and fail to provide "final relief" as required under Fed. R. Civ. P. 23(b)(2).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Cumalander's claim for benefits and appeal.

Cumalander has health coverage underwritten by his employer and administered by BCBST.  Compl. ¶ 1.  The terms of his contract are set forth in an evidence of coverage document (the "Plan"), attached to the Complaint as Exhibit A.  The Plan covers services that are medically necessary, which means that the service must be one "that a medical Practitioner, exercising prudent clinical judgment, would provide to a Member for the purpose of preventing, evaluating, diagnosing or treating" the member's specific "illness, injury or disease or its symptoms" and that is (a) "in accordance with generally accepted standards of medical practice"; (b) "[c]linically appropriate in terms of type, frequency, extent, site and duration" and "considered effective for" the member's specific "illness, injury, or disease"; (c) "[n]ot primarily for the convenience of the Member, physician or other health care Provider"; and (d) "[n]ot more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic

2

results as to the diagnosis or treatment of" the member's specific "illness, injury or disease." *Id.*, p. 67.

The Plan does not cover services that are investigational, which means that (1) the service must have final approval from the appropriate regulatory bodies; (2) the "scientific evidence must permit conclusions concerning the effect of the technology on health outcomes";[1] (3) the service "must improve the net health outcome," which means "[t]he technology's beneficial effects on health outcomes should outweigh any harmful effects on health outcomes"; and (4) the service must be attainable outside investigational settings. *Id.*, p. 55-56. BCBST's Medical Director has "discretionary authority to make a determination concerning whether a service or supply is Investigational." *Id.*, p. 56.

BCBST also has a medical policy governing medical determinations about PBRT. *See* Exhibit A (the "Medical Policy").[2] BCBST's Medical Policy states that PBRT is considered investigational for prostate cancer "unless there are unique clinical circumstances applicable to a specific member that would make use of proton beam therapy medically appropriate." *Id.* at 1.

In September 2022, Cumalander was diagnosed with prostate cancer. Compl. ¶ 43. Cumalander chose to travel to Florida and receive PBRT in Jacksonville, Florida. Compl. ¶ 45. Cumalander alleges he submitted claims for reimbursement to BCBST, and BCBST determined

---

[1] The "scientific evidence" should (i) "consist of well-designed and well-conducted investigations published in peer-reviewed journals. The quality of the body of studies and the consistency of the results are considered in evaluating the evidence"; and (ii) "demonstrate that the technology could measure or alter the physiological changes related to a disease, injury, illness or condition. In addition, there should be evidence or a convincing argument based on established medical facts that such measurement or alteration affects health outcomes." *Id.* at 56.

[2] Courts may consider documents that are referenced in a plaintiff's complaint and that are central to a plaintiff's claims. *Gulfside Casino P'ship v. Churchill Downs Inc.*, 861 F. App'x 39, 42 (6th Cir. 2021) (citing *Rondigo LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)).

3

that the services were not covered under the terms of the Plan because they were investigational. Compl. ¶ 46.  Cumalander and his Florida-based doctor submitted two levels of appeals to BCBST, and BCBST upheld the initial determination that the services were not covered under the Plan because they were investigational.  Compl. ¶¶ 49-50.  Cumalander sought an independent external review, consistent with the terms of his Plan, and the independent external review likewise found that the services were investigational.  Compl. ¶¶ 51-53.

### B.      Procedural history.

On July 20, 2023, Cumalander filed a putative class action in the U.S. District Court for the Eastern District of North Carolina, seeking to represent a class of "participants and beneficiaries of ERISA health benefit plans administered and/or insured by [BCBST] who were denied benefits for proton beam radiation therapy [] to treat prostate cancer."  Compl. ¶ 1.  On May 21, 2024, the Eastern District of North Carolina granted BCBST's motion to transfer the case, and this action was transferred to this Court on May 23, 2024.  Dkt. Nos. 25-26.[3]

Cumalander alleges that the Court can determine, without considering each member's individual medical circumstances, whether BCBST "uniformly applied an arbitrary medical policy to deny claims" for PBRT.  Compl. ¶ 2.  On behalf of the putative class, Cumalander asserts that BCBST (1) improperly denied claims for benefits relating to PBRT as a treatment for prostate cancer, in violation of 29 U.S.C. § 1132(a)(1)(B), and (2) improperly adopted and implemented a medical policy to deny PBRT for prostate cancer, in violation of 29 U.S.C. § 1132(a)(3).  Compl. ¶¶ 90-115.

---

[3] The parties then stipulated under LR 7.1 that BCBST's deadline to answer the complaint would be extended by and through June 18, 2024.

Cumalander seeks plan benefits; equitable relief, including "an accounting and disgorgement by BCBST of any profits"; injunctive relief, including an order requiring BCBST to "reprocess" PBRT claims to treat prostate cancer; and attorneys' fees. Compl. ¶¶ 114-16.

## III.    ARGUMENT

### A.    Legal standard.

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, a court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, a court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is a court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, a court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its

5

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Cumalander's breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) seeks relief that is fully remedied by his denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B).

The Court should dismiss Cumalander's breach of fiduciary duty claim under § 1132(a)(3) as a matter of law because Cumalander has not alleged any harm that cannot be remedied by relief available pursuant to his claim for benefits under § 1132(a)(1)(B).

Section 1132(a)(3) of ERISA provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This provision does not authorize "'appropriate equitable relief' *at large*." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993). Instead, it only authorizes "such relief as will enforce 'the terms of the plan' or the statute." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (quoting 29 U.S.C. § 1132(a)(3)).

Cumalander seeks relief for denial of benefits under § 1332(a)(1)(B) and equitable relief for BCBST's alleged breach of its fiduciary duties under § 1332(a)(3). But if Cumalander's injury is addressed by ERISA's other provisions, which can afford adequate relief, there is no need for equitable relief. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[W]here Congress elsewhere

6

provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief.").

The Sixth Circuit is clear that equitable relief for breach of fiduciary duty claims is not available for denial of benefits claims under § 1132(a)(1)(B). *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 375 (6th Cir. 2015) ("[T]he Supreme Court has never stated that recovery under both § 502(a)(3) and § 502(a)(1)(B) may be warranted for a single injury"); *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007) ("[A] plaintiff who is permitted to bring a § 1132(a)(1)(B) claim for denial of benefits and does so is under no circumstance permitted to also bring a § 1132(a)(3) claim.").

In *Rochow*, the Sixth Circuit explained that a plaintiff cannot simply "repackag[e] [a] wrongful denial of benefits claim as a breach-of-fiduciary-duty claim" because "there is but one remediable injury and it is properly and adequately remedied under § 502(a)(1)(B)." 780 F.3d at 372; *see also Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 615 (6th Cir. 1998) ("Because § 1132(a)(1)(B) provides a remedy for the claimant's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to [§ 1132(a)(3)]."). In other words, Cumalander must show he could not avail himself of an adequate remedy pursuant to § 1132(a)(1)(B) to be entitled to any relief under § 1132(a)(3). *Rochow*, 780 F.3d at 372-73.

Here, the Court should dismiss Cumalander's claim under § 1132(a)(3) in Count II under *Varity*, *Rochow,* and *Wilkins* because his injury – the denial of benefits – is adequately remedied by the relief Cumalander seeks under § 1132(a)(1)(B) in Count I. The declaratory and injunctive relief, accounting, and disgorgement Cumalander seeks under § 1132(a)(3) are based on the same

7

injury as his § 1132(a)(1)(B) claim: the allegedly wrongful denial of Cumalander's PBRT services under the Plan based on BCBST's Medical Policy. *Compare* Count I, ¶ 93 (alleging BCBST "wrongfully denied Plaintiff and the Class members' claims for PBRT by unreasonably relying upon its Medical Policy"), *with* Count II, ¶ 108 (alleging BCBST "violated these duties by adopting and implementing a Proton Beam Therapy Medical Policy to deny coverage for PBRT based on investigational exclusions under its plans").

Because Cumalander's claim for equitable relief under § 1132(a)(3) is premised upon the same alleged conduct and is merely a repackaged claim for benefits under § 1132(a)(1)(B), the Court should dismiss Count II a matter of law.

### C. Cumalander's disgorgement of profits remedy also fails as a matter of law because Cumalander is only entitled to recover benefits due under the policy.

The Court should dismiss Cumalander's demand for disgorgement of profits, Compl. ¶¶ 114(b), 116(j), as a matter of law because Cumalander already has alleged an adequate remedy available under his benefits claim and disgorgement would amount to a duplicative recovery.

*Rochow* is directly on point. In *Rochow*, the district court held that that the plaintiff could recover under both § 1132(a)(1)(B) and § 1132(a)(3) because he "pleaded claims for two distinct kinds of relief, namely one claim to recover benefits arbitrarily and capriciously denied by [the insurer], and one claim for disgorgement of profits realized by [the insurer] as a result of its breach of fiduciary duty consisting of the arbitrary and capricious denial of benefits." 780 F.3d at 370-71. The Sixth Circuit reversed, finding that Rochow had been "made whole" through recovery of his benefits, fees, and prejudgment interest, so allowing an additional recovery of disgorged profits would result in "an impermissible duplicative recovery." *Id.* at 371-72. The Sixth Circuit explained that if the denial of benefits would entitle a claimant to disgorgement of profits in addition to a recovery of benefits, then "equitable relief would be potentially available whenever

8

a benefits denial is held to be arbitrary or capricious," which would be "plainly beyond and inconsistent with ERISA's purpose to make claimants whole." *Id.* at 372.

In *Rochow*, the plaintiff asserted he had suffered two distinct injuries sufficient to support a double recovery: (1) denial of benefits; and (2) the insurer's use of funds allegedly owed him "to generate $3.7 million in profits for its own account without remitting the profits to him." 780 F.3d at 373-74. The Sixth Circuit rejected this argument, explaining that in an action for wrongful denial of benefits, "[t]he denial is the injury and the withholding is simply ancillary thereto, the continuing effect of the same denial. Together they comprise a single injury." *Id.* at 374. Despite the plaintiff's "creative use of semantics, the reality remains clear: [the plaintiff] suffered one injury, the denial of his benefits." *Id.* The Sixth Circuit concluded that because the "remedy Congress chose to make available under § 502(a)(1)(B)" had not been shown to be inadequate, permitting the plaintiff "to obtain further equitable relief for the same injury under § 502(a)(3) would contravene the scheme established by Congress as well as the Supreme Court's teaching in *Varity*." *Id.*

In *Fenwick v. Hartford Life & Accident Ins. Co.*, 841 F. App'x 847 (6th Cir. 2021), the Sixth Circuit likewise dismissed two § 1132(a)(3) claims for breach of fiduciary duty and disgorgement as duplicative of the claimant's denial of benefits claim. *Id.* at 859. For the breach of fiduciary duty claim, the plaintiff in *Fenwick* alleged that Hartford Life systematically delayed decisions and accepted the opinions of its own reviewers over treating physicians. *Id.* For the disgorgement claim, the plaintiff sought to recover Hartford Life's earnings from her allegedly improperly terminated benefits. *Id.* The Sixth Circuit held that no factual development could "cure the legal insufficiency of Fenwick's equitable claims" because they "would be remedied identically to her main ERISA claim: by recovering the benefits." *Id.*

9

The same is true here: Cumalander's denial of benefits claim in Count I is indistinguishable from his equitable claim in Count II, where Cumalander alleges that BCBST withheld wrongfully denied benefits "thereby benefitting itself and its corporate affiliates and clients at the expense of claimants." Compl. ¶ 110. Because Cumalander's only available remedy is for denied benefits under § 1132(a)(1)(B) (Count I), the Court should dismiss his claim for additional equitable relief in Count II and disgorgement of profits remedy in the Prayer for Relief as a matter of law.

### D. The Court should strike Cumalander's class action claims because they depend on questions which are inherently individualized.

Following the U.S. Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011), the Northern District of Illinois struck class allegations in an ERISA lawsuit seeking coverage for PBRT that is indistinguishable from this case. *See Day v. Humana Ins. Co.*, 335 F.R.D. 181, 200 (N.D. Ill. 2020). This Court should strike Cumalander's class allegations for the same reasons.

### 1. Cumalander's complaint does not meet the legal standard for class actions.

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes*, 564 U.S. at 348–49 (citation omitted). In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (citation omitted). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Id.* Rule 23 contemplates that a court will determine at "an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A); *see also* Fed. R. Civ. P. 23(d)(1)(D) (authorizing the

court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly").

A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011). A court may properly strike class allegations prior to discovery where discovery would not have "alter[ed] the central defect in th[e] class claim." *Id.* at 949 (affirming an order striking class allegations and dismissing a lawsuit prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering"); *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.").

In this case, there are fundamental defects in Cumalander's class allegations, including that the Court will inevitably have to engage in an individualized review of each class member's claim for benefits. This relief is unavailable on a class-wide basis.

### 2. Cumalander's class allegations fail as a matter of law because Cumalander fails to identify common issues that support certification.

Cumalander seeks to represent every person who sought coverage for PBRT for prostate cancer under group health care coverage administered or insured by BCBST, where BCBST found that the treatment was not medically necessary or was experimental, investigational, or unproven. Compl., ¶ 69. As a matter of law, the Court cannot adjudicate the claims asserted by Cumalander on a class-wide basis consistent with Rule 23 and the U.S. Supreme Court's decision in *Dukes*, 564 U.S. 338.

11

In the Complaint, Cumalander identifies six common questions that he argues are fit for class-wide resolution: (a) whether PBRT is an "investigational" treatment for prostate cancer under plans administered by BCBST; (b) whether BCBST categorically applied its Medical Policy to deny coverage to class members; (c) whether class members' denials were based in whole or in part on that Medical Policy; (d) whether the PBRT medical policy conflicts with class members' plans; (e) whether applying the Medical Policy to each class members claim breached BCBST's fiduciary duties under ERISA; and (f) whether class members are entitled to the relief sought, which includes the reprocessing of individual claims. Compl., ¶ 81.

*Dukes* requires a "rigorous analysis" of whether common issues "can productively be litigated at once." 564 U.S. at 350–51. What matters "is not the raising of common 'questions'— even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350 (emphasis added).

Here, Cumalander will inevitably be able to identify common questions—but they are superficial. Superficial common questions do not qualify as common issues, since "[a]ny competently crafted class complaint literally raises common questions." *Id.* Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 359. The class "claims must depend upon a common contention," and "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. In the class certification analysis, "a court must 'probe behind the pleadings before coming to rest on the certification question,' satisfying itself that Rule 23 compliance may be demonstrated through

12

'evidentiary proof.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 140 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432 (2013)).

Two of the issues identified by Cumalander are the kind of superficial "common questions" *Dukes* warned about. Asking whether BCBST breached its fiduciary duties (subsection (e)) and whether class members are "entitled to the relief sought" if Cumalander establishes liability (subsection (f)) may be common questions. But they do not generate common answers "apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. As a matter of law, these are not sufficient common issues to sustain a class under Rule 23.

Subsections (b)-(d) of Paragraph 81 do not raise a common question that supports certification either, as demonstrated by the Northern District of Illinois's decision in *Day v. Humana*, 335 F.R.D. at 184. In that case, the plaintiff's doctor determined she should be treated with PBRT for brain cancer. *Id.* The plaintiff alleged that Humana "systemically rejects coverage for PBRT, asserting that more traditional radiation therapy . . . is more appropriate for almost all types of cancer." *Id.* at 199. The plaintiff sought to certify a class of all persons covered under healthcare plans administered and/or insured by Humana who applied for PBRT and were denied coverage based on a determination the service was, among other things, not medically necessary. *Id.* at 189.

The court in *Day* concluded that the plaintiff's class allegations, "like those in *Dukes*, do not identify any 'glue' that unites 'the alleged *reasons'* for which Humana denied each putative class member's benefits clam." *Day*, 335 F.R.D. at 199 (emphasis in original). In that case, as is the case here, Humana exercised discretion in determining whether the member was entitled to the benefit at issue and decided whether the proposed treatment was "medically necessary" based on the member's individual medical circumstances. *Id.*

13

Thus, the court in *Day* reasoned that individualized determinations were inevitable. "To hold Defendants liable for wrongfully denying benefits or breaching its fiduciary duties under ERISA, each class member would need to show that Humana misapplied the Plan language to his or her specific medical circumstances." *Id.* This presents a fundamental problem for class certification: the evidence required to make this showing varies among members, as do the plan terms at issue for each member. Against this backdrop, the court concluded that the plaintiff's allegations "nowhere identify a common way in which Humana applies the Plan (or other plans it administers) to deny PBRT coverage." *Id.*

The plaintiff in *Day* had also alleged that Humana "relies exclusively" on a "Medical Coverage Policy" for PBRT, "which is not contained in or incorporated into the plan" and was "geared toward directing claim denials for all PBRT claims." *Id.* But the court in *Day* concluded that under the terms of both the plan and the policy, "Humana has broad discretion to determine whether a putative class member is entitled to PBRT treatment for his or her specific form of cancer, based on his or her individual circumstances." *Id.* at 199–200. *Day* also observed that "Humana referenced numerous sources to administer Plaintiff's claim, including NCCN Guidelines, at least one clinical trial, and Plaintiff's medical records." *Id.* at 200. These allegations "contradict the assertion that Humana relies exclusively on the Policy to make PBRT coverage determinations and underscores the individualized nature of the determinations." *Id.* Ultimately, *Day* concluded that the plaintiff "ha[d] not plausibly alleged that Humana applies the Policy in a uniform manner to deny PBRT treatment for all putative class members" and struck the class action allegations on the pleadings. *Id.*

*Day* provides important guidance for this Court in this case. As in *Day*, Cumalander alleges that BCBST has discretion in determining whether putative class members are entitled to coverage

14

for PBRT and has to decide whether the proposed treatment is "investigational" given each member's individual medical circumstances and plan language – thereby defeating the alleged common question in subsection (a).  Compl. ¶¶ 24, 38, 102.

This is particularly important because an ERISA claim depends on the terms of each individual's group health plan, and the putative class members here are participants in many different plans with varying coverage terms.  ERISA's "principal function" is to "protect contractually defined benefits."  *McCutchen*, 569 U.S. at 100 (citation omitted).  Employers have "large leeway" to design benefits plans as they see fit.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003).

Once a plan is established, the administrator's duty is to see that the plan is "maintained pursuant to [that] written instrument."  29 U.S.C. § 1102(a)(1).  ERISA "speaks of *enforcing* the terms of the plan, not of *changing* them," so "particular importance" is placed upon "enforcing plan terms as written in § 502(a)(1)(B) claims."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013).  This focus on the written terms of the plan is the linchpin of "a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place."  *Varity*, 516 U.S. at 497.  Because BCBST is an administrator for many plans with different language and terms, the Court's adjudication of putative class members' claims inherently would be individualized.

For example, Cumalander's Plan sets forth four factors which must be satisfied in order for a service to qualify as "Investigational."  Compl. ¶ 38; Doc. 1-1 at 55-56.  The Plan provides extensive detail about how that determination will be made, including by a Medical Director who may base his or her decision on the member's medical records, the member's delivery protocols for treatment, medical policies, clinical guidelines, and published authoritative medical or

15

scientific literature. Compl. ¶ 38; Doc. 1-1 at 56. BCBST's Medical Policy likewise states that PBRT is investigational "unless there are unique clinical circumstances applicable to a specific member that would make use of proton beam therapy medically appropriate." Ex. A at 1. Thus, in order to decide Cumalander's individual claim for coverage, the Court will have to apply the terms of Cumalander's individual Plan to Cumalander's unique clinical and medical circumstances and the totality of Cumalander's medical record.

To assess each putative class member's claims, the Court would then need to re-engage in this same exercise for each and every purported class member – apply the terms of each member's plan language to his or her specific circumstances and individualized medical record. Against this backdrop, the class claims cannot be certified as a matter of law because "each class member would need to show that [BCBST] misapplied the Plan language to his or her specific medical circumstances." *Day*, 335 F.R.D. at 199.

Other courts have similarly recognized that the kind of ERISA claim Cumalander presents here is not suitable to class certification, given the inherent individualized inquiry required for each member. *See, e.g.*, *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009) (class certification not possible for ERISA denial of benefits claim because of the need for "an individualized review of every claim that was denied"); *Fotta v. Trustees of United Mine Workers of Am.*, 319 F.3d 612, 619 (3d Cir. 2003) (rejecting certification of ERISA benefits claims because "both liability and the appropriate remedy must be determined for each plaintiff," so "no common issues of law or fact exist"); *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 137–38 (3d Cir. 2000) (affirming district court's denial of class certification for beneficiaries alleging their benefits were wrongfully delayed because "the issue of liability itself requires an individualized inquiry into the equities of each claim"); *see also Jamie S. v. Milwaukee Pub. Sch.*,

16

668 F.3d 481, 485 (7th Cir. 2012) (reversing certification of broad class of students asserting claims under the Individuals with Disabilities Education Act ("IDEA") because "resolving any individual class member's claim for relief under the IDEA requires an inherently particularized inquiry into the circumstances of the child's case," including case-specific judgment by a "trained and particularized professional").

While Cumalander purports to identify a single "common" question, his proposed class definition betrays "minefields of subjectivity" requiring individualized adjudication just to decide class membership. *Berndt v. Cal. Dep't of Corr.*, No. C 03-3174 VRW, 2010 WL 2035325, at *1, *3 (N.D. Cal. May 19, 2010) (denying class certification because there was "no easy way to determine class membership . . . without the court conducting individualized analyses based on the merits of each case"). The *Day* case illustrates that this Court would have to make individualized medical necessity determinations in order to determine class membership under the proposed Class Definition. After striking the class allegations on the pleadings, the court in *Day* allowed the named plaintiff's individual claims to proceed but concluded that "[a]gainst this backdrop, Plaintiff's allegations nowhere identify a common way in which Humana applies the [plans] to deny PBRT coverage." 335 F.R.D. at 195–199; *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.").

Here, just as in *Day*, the Court should strike the class allegations. Cumalander cannot dispute that whether a class member is entitled to relief for denial of benefits under ERISA depends upon what is covered under the terms of that member's benefit plan based on the individual member's specific medical circumstances and the totality of the record. This process is inherently

17

individualized. Accordingly, this Court should not certify this class. No amount of discovery can remedy these fundamental defects in Cumalander's class allegations.[4]

### E. Reprocessing is not available as class-wide remedy.

Cumalander seeks an order "requiring BCBST[] to reprocess Plaintiff and Class Members' claims . . . in accordance with ERISA." Compl. ¶ 116(d). But Cumalander is barred from seeking reprocessing as a class-wide remedy because reprocessing injunctions require too many individualized determinations of eligibility and medical necessity and fail to provide "final relief" as required under Fed. R. Civ. P. 23(b)(2).

#### 1. Reprocessing requires individualized inquiries that preclude class-wide resolution.

Class-wide reprocessing is not available as a remedy because it requires an individualized claims review of each remanded claim. In *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023), the Ninth Circuit reversed a district court's decision to certify a class of health care beneficiaries and prohibited reprocessing on a class-wide basis. The plaintiffs in *Wit* had alleged that defendant United wrongfully denied their health benefits claim by applying improper guidelines in violation of ERISA and various state laws. *Id*. at 1077-78. The district court certified the classes of ERISA plan members under Rule 23(b)(1), (b)(2), and (b)(3) and ordered United to reprocess the ERISA claims without reference to the offending guidelines. *See Wit v. United Behav. Health*, 317 F.R.D. 106, 118, 141 (N.D. Cal. 2016); *Wit*, 79 F.4th at 1081 ("The district court issued declaratory and injunctive relief, directed the implementation of court-determined

---

[4] A host of other individualized issues preclude class certification, including the requirement that class members must have exhausted their administrative remedies. BCBST does not raise all of these deficiencies in the context of this motion to strike but reserves the right to assert these and other defenses.

claims processing guidelines, ordered 'reprocessing' of all class members' claims in accordance with the new guidelines, and appointed a special master to oversee compliance for ten years.").

The Ninth Circuit reversed, holding that that the district court erred by certifying the classes and by ordering reprocessing under corrected guidelines. *Id*. at *9. The district court could not order reprocessing because, to be eligible for a remand, a plaintiff must "sho[w] that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard." *Wit*, 79 F.4th at 1084. The class in *Wit* included class members who could not satisfy these prerequisites for reprocessing. Because "[s]ome class members' claims could have been denied for reasons wholly independent of the [g]uidelines" at issue, the Ninth Circuit concluded that the plaintiffs "have fallen short of demonstrating that all class members were denied a full and fair review of their claims or that such a common showing is possible." *Id*. at 1086. By including individuals in the class who "would not be eligible for reprocessing" had they proceeded as individuals, the district court had used class certification "in a way that enlarged or modified Plaintiffs' substantive rights in violation of the Rules Enabling Act." *Id*. The Ninth Circuit thus held that certification and reprocessing relief on a class-wide basis were each reversible error. *Id*.

The same is true here. As in *Wit*, the putative class here is comprised of members of numerous ERISA health benefit plans. As in *Wit*, Cumalander asks this Court to order BCBST to reprocess those claims pursuant to ERISA's regulatory framework. *Wit* makes clear that this type of class-wide injunctive relief is not allowed where class members' "claims may have been denied for reasons wholly independent" of the challenged aspect of the plan. 79 F.4th at 1085; *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 886 (7th Cir. 2011) (determining the reprocessing injunction Plaintiffs sought cannot satisfy Rule 23(b) because it "would only lay an

19

evidentiary foundation for subsequent individual determinations" of medical necessity and damages).

### 2. Reprocessing fails to provide "final relief" as required under Rule 23(b)(2).

Reprocessing is also an impermissible remedy because it would merely "initiate a process through which highly individualized determinations of liability and remedy are made" and does not provide "final relief" sufficient to satisfy Rule 23(b). *Jamie S.*, 668 F.3d at 499. Reprocessing is only the first step towards the possibility of final relief. Final relief would occur only after (1) BCBST reprocesses each individual class member's claim via highly individualized inquiries to determine medical necessity and amounts due, *and* (2) those class members receive any payment to which they are entitled.

In *Kartman v. State Farm Mut. Auto. Ins. Co.*, for example, the district court issued an injunction requiring State Farm to reinspect all class members' roofs pursuant to a new standard, but the Seventh Circuit found that class certification was improper because the relief only provided an "evidentiary foundation for subsequent determinations of liability." 634 F.3d at 893. The court emphasized that the injunction would result in a multitude of subsequent, individual proceedings to determine breach, causation, and damages. *Id.* As the court explained, "certification of a class under Rule 23(b)(2) is permissible only when class plaintiffs seek 'final injunctive relief' that is 'appropriate respecting the class as a whole.'" *Id.* at 886 (citation omitted). In other words, "the injunction envisioned by the plaintiffs would in no sense be a final remedy." *Id.*

Likewise, in *Jamie S.*, the plaintiffs sought certification under Rule 23(b)(2) of a class of children with disabilities eligible for services under the IDEA. 668 F.3d at 485, 487. As the court explained, "[t]hat the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a *substantive* matter the

20

relief sought would *merely initiate a process through which highly individualized determinations of liability and remedy are made*; this kind of relief would be class-wide in name only, and it would certainly not be final." *Id.* at 499 (emphases added). The court denied certification because "there can be no single injunction that provides final relief to the class as a whole." *Id.*

Cumalander's putative "PBRT class" suffers from the same fatal flaw. Cumalander seeks an injunction directing BCBST to re-adjudicate all claims for PBRT for prostate cancer previously denied as "not medically necessary" or as "experimental, investigational, or unproven" — a process that involves "highly individualized determinations" of medical necessity and payments owed for each class member. *Jamie S.*, 668 F.3d at 499. This is impermissible because no class member would receive final relief from *this Court*, as required by Rule 23(b). An injunction requiring BCBST to reprocess claims would only initiate a re-evaluation of each absent class member's individual claims. Each class member would still have to prove that the requested treatment was medically necessary, that he or she was otherwise entitled to coverage under the relevant plan, and that as a result he or she is entitled to benefits. Reprocessing is not an available remedy under Rule 23(b) because it does not provide final injunctive relief.

## IV.    CONCLUSION

For these reasons, Cumalander's claim for equitable relief under 29 U.S.C. 1132(a)(3) in Count II, request for disgorgement of profits, and request for relief in the form of claims reprocessing should be dismissed as a matter of law pursuant to Rule 12(b)(6). Additionally, BCBST requests that the Court strike the class allegations from the Complaint.

DATED this 18th day of June, 2024.

*s/ Gwendolyn C. Payton*
Marc H. Harwell, BPR #013817
marc@harwelllawgroup.com
HARWELL & HURST PLLC
832 Georgia Avenue, Suite 510
Chattanooga, TN 37402
Telephone: (423) 756-7333

Gwendolyn C. Payton (*appearing pro hac vice*)
gpayton@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON
LLP
1420 Fifth Ave., Suite 3700
Seattle, WA 98101
Telephone: (206) 626-7714

Stephanie N. Bedard (*appearing pro hac vice*)
sbedard@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON
LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6039

*Counsel for Defendant BlueCross BlueShield of
Tennessee, Inc.*

22

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, do hereby certify that the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF filing system which automatically sends email notifications of such filing to the following attorneys of record:

Norris A. Adams, II
nadams@essexrichards.com
ESSEX RICHARDS, P.A.
1701 South Boulevard
Charlotte, NC 28203
Telephone: (704) 377-4300

Elizabeth K. Green
egreen@greenhealthlaw.com
GREEN HEALTH LAW, APC
201 N. Brand Blvd., Ste 200
Glendale, CA 91203
Telephone: (818) 722-1164

Stephanie A. Casey
scasey@colson.com
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Telephone: (305) 476-7400

Timothy James Rozelle
trozelle@kantorlaw.net
KANTOR & KANTOR, LLP
9301 Corbin Avenue, Suite 1400
Northridge, CA 91324
Telephone: (818) 886-2525

Kaci Garrabrant
kgarrabrant@buchanandisability.com
ERIC BUCHANAN & ASSOCIATES, PLLC
414 McCallie Avenue
Chattanooga, TN 37402
Telephone: (423) 634-2506

This 18th day of June, 2024.

*s/ Gwendolyn C. Payton*
GWENDOLYN C. PAYTON

23