IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION
CASE NO. 1:24-cv-176-TRM-CHS

WILLIAM MARK CUMALANDER, on behalf
of himself and all others similarly situated,

               Plaintiff,

   vs.

BLUECROSS BLUESHIELD OF
TENNESSEE, INC.

          Defendant.

_____

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff William Mark Cumalander, individually and on behalf of all others similarly situated,

submits this Response in Opposition to Defendant Blue Cross and Blue Shield of Tennessee, Inc.'s

("BCBSTN") Motion to Dismiss and Strike Class Allegations. D.E. # 48.

## INTRODUCTION

With this action, Plaintiff presents the class claims of a representative claimant whose

request for coverage for proton beam radiation therapy ("PBRT") for prostate cancer was denied by

Defendant as "experimental, investigational, and/or not medically necessary" based on BCBSTN's

uniform application of an arbitrary medical policy. D.E. # 1, ¶ 2. Plaintiff's claims are properly

alleged and satisfy the standards and requirements under the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and for maintaining a class action under Rule 23

of the Federal Rules of Civil Procedure, sufficiently to maintain claims for relief necessary to meet

and exceed Rule 12(b)(6)'s requirements at this pleading stage.

## LEGAL STANDARD

"[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricco v. Potter,* 377 F.3d 599, 602 (6th Cir. 2004) (quotation omitted). In reviewing a motion to dismiss, courts should construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. *See Evans–Marshall v. Bd. of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir. 1991). While all the factual allegations of the complaint are accepted as true, courts "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000) (citation omitted).

## **ARGUMENT**

### A. **Defendant's failure to meaningfully confer is grounds for summary denial.**

This Court requires that the parties meet and confer prior to the filing of a motion to dismiss. *See* D.E. # 34. Defendant sent its motion to dismiss, memorandum of law, and exhibit to Plaintiff after regular business hours on **June 18, 2024 at 5:53 p.m. EDT**, and advised Plaintiff that Defendant "plan[ned] to file the attached motion to dismiss and strike class allegations and supporting memorandum in the above action this evening," providing Plaintiff with a deadline of 9 p.m. EDT that same night to meet and confer before it would proceed with its planned filings. Plaintiff's counsel were unavailable to meet after regular business hours on the night Defendant stated it intended to file its motion to dismiss (and were certainly unable to review and research the merits of Defendant's brief, arguments, and case law). Defendant proceeded to file its motion to dismiss on **June 18, 2024. at 9:25 p.m. EDT**. *See* D.E. # 48. Because Defendant failed to meaningfully confer with Plaintiff in good faith by not sending its motion, memorandum of law, and exhibit until after hours on the same night it filed its motion to dismiss, the Court should summarily deny Defendant's motion for violating its Standing Order Governing Motions to Dismiss.

**B.**     **Plaintiff's claim for relief under Subsection (a)(3) is not barred as duplicative of his claim for relief under Subsection (a)(1)(B) at this pleading stage, nor is it fully or adequately remedied by his claim for relief under Subsection (a)(1)(B). (Def. Br., pp. 6-8)**

Defendant argues that *Varity Corp. v. Howe*, 516 U.S. 489 (1996), bars Plaintiff from maintaining a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and a claim for equitable relief under 29 U.S.C. § 1132(a)(3) where his "injury is addressed by ERISA's other provisions, which can afford adequate relief." Def. Br., p. 6. However, the cases upon which Defendant relies,[1] as well as the Supreme Court's decision in *Cigna Corp. v. Amara*, are procedurally distinctive from this case. Indeed, none of Defendant's cases were decided at the pleading stage on a motion to dismiss, as has been sought here, but rather they were all decided after at least one of the two claims at issue had been fully adjudicated: *Varity* after trial; *Rochow* and *Amara* after the (a)(1)(B) claim had been fully and finally decided; *Gore* after a bifurcated framework that consisted of the benefits and civil penalties claims being decided in the first stage of the litigation and the breach of fiduciary duty claims being decided in the second stage of the litigation; and *Wilkins* and *Fenwick* on summary judgment.

Indeed, in *Amara*, after ruling that Subsection (a)(1)(B) remedies were unavailable, the Supreme Court remanded to the lower court to determine whether equitable relief was appropriate under Subsection 502(a)(3). 563 U.S. 421, 444-45 (2011). In other words, *Amara* "permitted the employee **class** in the first instance to pursue claims under both Sections 502(a)(1)(B) and 502(a)(3), and, after ruling that Section 502(a)(1)(B) remedies were unavailable, permitted the lower court to determine whether reformation, estoppel, or surcharge were appropriate under Section 502(a)(3)." *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F.Supp.3d 1209, 1222 (D. Utah 2019) (emphasis

---

[1]     Defendant's cited cases include: (1) *Varity*, (2) *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364 (6th Cir. 2015), (3) *Gore v. El Paso Energy Corp. Long Term Disab. Plan*, 477 F.3d 833 (6th Cir. 2007), (4) *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609 (6th Cir. 1998), and (5) *Fenwick v. Hartford Life & Accid. Ins. Co.*, 841 F. App'x 847 (6th Cir. 2021). *See* Def. Br., pp. 6-7, 9.

added). *See also*, *Brown v. United of Omaha Life Ins. Co.*, 661 F. App'x 852, 860-61 (6th Cir. 2016) (reversing district court's grant of summary judgment to defendant on plaintiff's Subsection (a)(3) claim and remanding to determine if the plaintiff had alleged a separate injury thereby making equitable relief appropriate).

The operative question here is not whether a party can bring simultaneous claims for relief under both subsections (it can), but whether adequate relief will ultimately be available, which is a decision that cannot be made at the pleading stage. If adequate relief is ultimately available under Subsection (a)(1)(B), Plaintiff may not then also recover duplicative relief under Subsection (a)(3) under controlling law. However, as *Rochow* explains, adequate relief under Subsection (a)(1)(B) is not available here.

Indeed, in *Rochow*, the plaintiff claimant's estate had already recovered all long-term disability benefits that had wrongfully been denied under Subsection (a)(1)(B) when the estate sought and was awarded disgorgement of profits. 780 F.3d 367-69. An *en banc* panel of the Sixth Circuit reversed and held that absent a showing that the remedy received under Subsection (a)(1)(B) was inadequate, the end result of recovering the full benefit amount and a disgorgement of profits would constitute an impermissible duplicative recovery:

> A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate.

*Id.* at 372. Setting aside Plaintiff's request for disgorgement of profits which is addressed in Section C. *infra*, Plaintiff's Subsection (a)(3) claim seeks very different relief than simply repackaging the wrongfully denied benefits and profits made from those wrongfully denied benefits. In fact, Plaintiff's Subsection (a)(3) claim does not seek monetary remedies at all. Rather, Plaintiff – on behalf of himself and the Class – seeks:

- Retraction of BCBSTN's categorical denials of PBRT for the treatment of prostate cancer;

- Notice of said determinations be delivered in the form and manner required by ERISA to all BCBSTN subscribers/members who have had requests for PBRT to treat prostate cancer denied;

- Re-review of all such improperly denied claims; and

- Revision and updating of BCBSTN's proton beam medical policy to make it consistent with current medical literature, research, studies, trials, and generally accepted standards of care.

D.E. #1, ¶ 114. It is inarguable that Congress has provided a remedy under Subsection (a)(3) that is not available under Subsection (a)(1)(B) wherein fiduciaries may be held to account for unreasonably or irrationally relying upon intrinsically flawed proton beam medical policies that intentionally ignore medical science and the standard of care of the medical community to blanketly deny a safe, proven, lifesaving, longstanding, efficacious medical procedure that has had FDA approval for decades. Indeed, Plaintiff's Subsection (a)(3) claims seeks this Court's power to mandate that Defendant revise and update its proton beam medical policy and with that, its internal methodology for deciding claims for PBRT treatment of prostate cancer to be consistent with current medical literature, research, studies, trials, and generally accepted standards of medical care.

In that respect, this case is far more factually and legally aligned with the Sixth Circuit's holding in *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005).[2] As discussed in *Rochow* and directly applicable here:

> In *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005), we further clarified the interplay of § 502(a)(1)(B) and § 502(a)(3). In *Hill*, the plaintiffs brought a class-action lawsuit seeking individual relief for wrongfully denied benefits under § 502(a)(1)(B) and for plan-wide injunctive relief under § 502(a)(3) based upon the

---

[2] Notably, despite (1) *Hill's* nearly factually identical nature to this case, both of which involve a class action brought by a plaintiff who had a wrongful denial of benefits claim under Subsection (a)(1)(B) and a breach of fiduciary duty claim under Subsection (a)(3) to challenge the flawed methodology of the insurer in denying claims, (2) the *Rochow* court coining this as "the *Hill* exception to *Varity* and *Wilkins*," and (3) Defendant's otherwise extensive treatment of *Rochow* (*see* Def. Br., pp. 7-10), Defendant did not cite to *Hill* once in its brief. *See* Def. Br., p. ii.

defendant's alleged breach of its fiduciary duty. The district court dismissed the § 502(a)(3) claim, finding that "these claims were merely repackaged claims for individual benefits and did not constitute actual fiduciary-duty claims." *Id.* at 717. We reversed. Whereas *Wilkins* involved the rejection of fiduciary-duty claims on the basis that they were actually disguised individual-benefits claims, in *Hill* the need for relief under the catchall provision arose out of a defect in *plan-wide* claim handling procedures, implicating a different injury. "The award of benefits to a particular [plaintiff] based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that [defendant] is using an allegedly improper methodology for handling . . . claims." *Id.* at 718. To remedy *this* separate and distinct injury, we permitted injunctive relief under § 502(a)(3), not an additional award of monetary damages for the same denial of benefits. Thus, *Hill* recognized an exception to *Varity* and *Wilkins* where "[o]nly *injunctive relief* of the type available under [§ 502(a)(3) would] provide the complete relief sought by Plaintiffs by requiring [Defendant] to alter the manner in which it administers all the Program's claims . . . ." *Id.* at 718 (emphasis added). In *Hill*, as in *Varity*, the primary purpose of ERISA was given effect—ensuring availability of an adequate remedy to make the plaintiffs whole.

*Rochow*, 780 F.3d at 373. That is precisely the case here: Plaintiff's Subsection (a)(3) claim (again, caveated as to the disgorgement of profits portion of the equitable remedies sought, which will be discussed in the next section) seeks to alter and remedy Defendant's improper methodology for handling PBRT claims on behalf of the class via injunctive relief. *See, e.g.*, D.E. # 1, VIII caption ("For Declaratory, Injunctive, and Other Equitable Relief"); ¶ 114; ¶¶ 116(d), (e), (h). As such, Plaintiff's claim for relief under Subsection (a)(3) is entirely consistent with *Rochow* and *Hill* and Defendant's motion to dismiss should therefore be denied accordingly.

## C. Plaintiff's disgorgement of profits claim for relief is proper at this stage of the litigation. (Def. Br., pp. 8-10)

Plaintiff acknowledges that in the Sixth Circuit – contrasted with the Fourth Circuit where this action was originally filed – he may not ultimately recover both wrongfully denied benefits under Subsection (a)(1)(B) and, specifically, disgorgement of profits under Subsection (a)(3), as they are considered duplicative relief following *Rochow*. 780 F.3d at 372. However, the pleading stage is an inadequate time to determine which claim for relief will ultimately provide Plaintiff and the class

adequate relief.[3] *Rochow* itself did not deny the plaintiff's disgorgement claim as duplicative until after the case had been fully litigated and the plaintiff had been awarded all benefits due, attorneys' fees, and prejudgment interest. Indeed, *Rochow* was unquestionably not decided on a motion to dismiss, as benefits under Subsection (a)(1)(B) were awarded in June 2005 (and affirmed in May 2007) and disgorgement of profits under Subsection (a)(3) was awarded in March 2012 (and affirmed in December 2013; later overturned *en banc* in March 2015). *Id.* at 367-69. As such, even under *Rochow*, the pleading stage is inappropriate to consider dismissal of Plaintiff's disgorgement claim, which is consistent throughout the circuits. *See, e.g.*, *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726–27 (8th Cir. 2014) ("a district court should generally not dismiss a 502(a)(3) claim as duplicative of a claim for benefits at the motion to dismiss stage of a case"); *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) (dismissal of (a)(3) claim was premature where the plaintiff "has not yet succeeded on his § 502(a)(1)(B) claim, and it is not clear at the motion to dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy."); *Rose v. PSA Airlines, Inc.*, No. 21-2207, 2023 U.S. App. LEXIS 23985, at *9 n.4. (4th Cir. Sept. 12, 2023) (finding that defendants' argument that Plaintiff "cannot proceed with her § 502(a)(3) claim because she also pursued a claim for denial of benefits under § 502(a)(1)(B)" was without merit); *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 546-47 (8th Cir. 2017) ("*Amara* implicitly determined that seeking relief under (a)(1)(B) does not preclude seeking relief under (a)(3)"); *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 960 (9th Cir. 2016) (*Amara* allows participants to seek plan benefits under Subsection (a)(1)(B) while simultaneously seeking relief under Subsection (a)(3)).

### D.    Plaintiff's class claims are viable. (Def. Br., pp. 10-18)

Defendant's challenge to Plaintiffs' class claims via a motion to strike – presumably under

---

[3]      *See* p. 3 *supra*. Indeed, none of the cases relied upon by Defendant were decided at the pleading stage on a motion to dismiss.

Rule 12(f)[4] – is widely unpopular among the courts. *See, e.g., Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953) (a motion to strike is a drastic remedy which courts should be hesitant to grant); *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted"); *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 246-47 (4th Cir. 2007) ("such motions are to be granted infrequently"); 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 1380, at 783 (1969)); 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 12.37[1] (3d ed. 2000) ("Courts disfavor the motion to strike, because it 'proposes a drastic remedy.'").

Indeed, "the Sixth Circuit disfavors . . . early resolution of a class action because courts typically lack the proper foundation with which to conduct the 'rigorous' class-certification analysis at the pleading stage." *City of Plaquemine v. Team Health Holdings, Inc.*, 3:23-cv-111, 2024 U.S. Dist. LEXIS, at *5 (E.D. Tenn. Mar. 29, 2024) (quoting *In re American Med. Sys.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996)). The "one exception" is where the complaint suffers from "a facial defect that cannot be cured by discovery." *Id.* "But when nothing in plaintiff's complaint clearly shows that plaintiff cannot successfully apply for certification of a class or sub-classes, courts deny motions to strike class allegations as premature." *Manlove v. Volkswagen Aktiengesellschaft*, 1:18-cv-145, 2019 U.S. Dist. LEXIS 108330, at *9 (E.D. Tenn. June 28, 2019).

A sister circuit to the Sixth has held that "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981). Motions pursuant to Rule 12(f) are disfavored because "it is essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives." *Id.* Courts in this circuit agree

---

[4]     Defendant did not specifically cite to Fed. R. Civ. P. 12(f) in its briefing, but does repeatedly ask that the Court strike Plaintiff's class action allegations in its caption and throughout its brief, and Rule 12(f) is the mechanism within the Federal Rules for doing so.

with the Fourth's approach in this regard. *See, e.g.*, *Woodall v. DSI Renal, Inc.*, No. 11-cv-2590, 2012 U.S. Dist. LEXIS 42826, at *24 (W.D. Tenn. Mar. 27, 2012) (citing *Int'l Woodworkers of Am.*, 659 F.2d at 1268) ("It is seldom, if ever, possible to resolve class representation questions from the pleadings."). Indeed, the Fifth Circuit itself has held that "[m]aintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide . . . The parties should be afforded an opportunity to present evidence." *In re American Medical Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

With that backdrop, Rule 12(f) places a "heavy burden" on Defendant. *Landers v. Loancare*, No. 1:20-cv-284, 2021 U.S. Dist. LEXIS 250127, at *19-20 (E.D. Tenn. Sept. 29, 2021) (citing *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991) (applying the 12(b)(6) motion to dismiss standard, the court held that defendant carries the "heavy burden" of demonstrating from the face of the complaint that it will be impossible to certify the class); *Schilling v. Kenton Cty.*, No. 10-cv-143, 2011 U.S. Dist. LEXIS 8050 (E.D. Ky. Jan. 27, 2011); *Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 U.S. Dist. LEXIS 95993 (E.D. Mich. Sept. 15, 2010) (also citing *Bryant v. Food Lion, Inc.*).

As Defendant noted, "[e]very class action must satisfy the four requirements of Rule 23(a) – numerosity, typicality, commonality, and adequacy of representation, with 'the final three requirements . . . tend[ing] to merge.'" *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982); Fed. R. Civ. P. 23(a). While Defendant cites generally to these four requirements (Def. Br., p. 10), its sole focus and argument is with respect to the commonality requirement. Def. Br., pp. 11-18. Defendant has not disputed Plaintiff's class on the numerosity, typicality, or numerosity requirements. As such, Plaintiff will likewise only respond to Defendant's commonality argument.

Under Rule 23(a)(2), Plaintiff must show that there are questions of law or fact common to the class. *Gen. Tel. Co. of the Southwest*, 457 U.S. at 155. A single common question is sufficient for

satisfying commonality. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *In re American Medical Sys.*, 75 F.3d 1069, 180 (6th Cir. 1996). Class members may present numerous questions of law or fact which are capable of class wide resolution. *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014). The proper focus is on Defendant's decisions which, as Plaintiff alleges, were common for each class member. *Id.* at 571. The Supreme Court has held:

> Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. For in such cases, the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.

*Gen. Tel. Co. of the Southwest*, 457 U.S. at 155 (internal citations omitted). Generally, commonality exists when the proposed class members challenge the same conduct of the defendant. *Stewart v. Cheek & Zeehandelar, L.L.P.*, 252 F.R.D. 387 (S.D. Ohio 2008).

Allegations of Defendant's denials of PBRT for prostate cancer establish commonality. Plaintiff alleges that Defendant repeatedly and consistently denied his requests for PBRT on the basis that it was not medically necessary and was experimental and/or investigational based upon Defendant's proton beam medical policy.

Defendant acknowledges that the Complaint is not facially defective: it alleges common questions for class-wide resolution. *See* Def. Br. at p. 12 ("Cumalander identifies six common questions that he argues are fit for class-wide resolution;" "Cumalander will inevitably be able to identify common questions . . . ."). Defendant, however, ignores that the Complaint clearly states that the action satisfies Rule 23(a)(2) and 23(b)(3) because questions of law and fact have "common answers." D.E. # 1 at ¶ 81. This action is appropriate for class relief precisely because Defendant uniformly denied every claim for PBRT for prostate cancer *without regard for any individual issues.* Despite the well-pled class allegations, Defendant urges the Court to go beyond the pleadings— without the benefit of any evidentiary record—and find that the alleged common questions are

"superficial." For this argument, Defendant relies on *Wal-Mart Stores*, 564 U.S. at 342, a case reversing a class certification ruling that was made *after extensive discovery*, once again relying upon a case decided at a very different stage in the litigation. Indeed, the question before the Supreme Court was whether the plaintiff submitted sufficient *evidence* of commonality, including statistical evidence, anecdotal reports, and expert testimony. *Id.* at 346, 355-56. In that case, the court concluded that plaintiff's "evidence f[e]ll[] well short." *Id.* at 356. At the pleading stage, courts are not in a position to evaluate the evidentiary sufficiency of the complaint allegations and, for this reason, the motion to strike must the denied. *See, e.g.*, *Landers*, 2021 U.S. Dist. LEXIS 250127, at *20-21 (denying motion to strike class allegations, noting that class discovery could reveal facts to support certification).

Defendant's heavy reliance on *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 199 (N.D. Ill. 2020), is misplaced because it is not precedential on this Court and is otherwise readily distinguishable. To begin, the *Day* plaintiffs represented a class of claimants receiving PBRT for *all types of cancer*. The *Day* court found that each class member would need to show that Humana misapplied the Plan language to his or her specific medical circumstances. *Id.* Here, in contrast, Plaintiff seeks to represent only those persons with *prostate cancer* who were denied PBRT. As such, there is a uniform and singular medical circumstance for Plaintiff and class members: prostate cancer sought to be treated by PBRT. The hurdles of the *Day* court in considering, for example, the type of cancer, are inapplicable here where the class definition is narrowly defined to a specific type of treatment for a specific type of cancer. D.E. # 1, ¶ 69.

Further distinguishable from *Day*, Plaintiff has the "glue" that unites the reasons which Defendant denied each putative class member's benefit claims. *Day*, 355 F.R.D. at 199. Plaintiff alleges that Defendant utilized its proton beam medical policy to consistently deny claims for PBRT for prostate cancer as not medically necessary and/or experimental, investigational, or unproven.

D.E. # 1 at ¶¶ 39-42, 81(b), 82, 93, 108, 110, 112. *Day* contained no such allegations, as here, that

the proton beam medical policy was applied "in a uniform manner to deny PBRT treatment for all

putative class members." *Day*, 335 F.R.D at 200. Courts have held that "[a]n illegal policy might

provide the 'glue' necessary to litigate otherwise highly individualized claims as a class." *Stafford v.

Carter*, No. 1:17-cv-289, 2018 U.S. Dist. LEXIS 27509, at *17 (S.D. Ind. Feb. 21, 2018) (citing *Wal-

Mart*, 564 U.S. at 351-55).

This case is instead much more factually and legally similar to two recent cases out of the

Eastern District of North Carolina involving very similar allegations of weaponizing a proton beam

medical policy to blanketly deny all PBRT treatment claims for prostate cancer by BCBSTN's fellow

member of the Blue Cross Blue Shield Association, Blue Cross and Blue Shield of North Carolina

("BCBSNC"). *See Paul v. Blue Cross Blue Shield of N.C.*, No. 5:23-cv-354, 2024 U.S. Dist. LEXIS 54142

(E.D.N.C. Mar. 26, 2024); *Greenwell v. Grp. Health Plan for Emples. Of Sensus U.S. and Blue Cross Blue

Shield of N.C.*, 505 F. Supp. 3d 594 (E.D.N.C. Dec. 4, 2020). The *Paul* court denied BCBSNC's very

similar motion to dismiss:

> Nor is it apparent from the face of the complaint that the commonality requirement,
> which requires that "[t]he common questions . . . be dispositive and over-shadow other
> issues," is not met. *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).
> Plaintiffs allege in essence that defendant ignored the nuances of each member's
> medical situation, applying instead a standardized coverage policy. (*See, e.g.*, compl. ¶
> 2) ("[defendant] uniformly applied an arbitrary medical policy to deny claims for
> PBRT[.]"); (id. ¶ 53) ("[defendant] denied [p]laintiffs' claims for PBRT based upon the
> [defendant's] [m]edical policy."); (id. ¶ 57) ("[defendant] systematically relied upon its
> internally developed . . . [m]edical [p]olicy to inappropriately justify applying more
> restrictive coverage guidelines than allowed for under the plain language of the
> applicable health plans.") In light of these allegations, which the court accepts as true
> at this stage of the litigation, defendant's contention that commonality is lacking
> because coverage decisions are made with consideration for each individual patient's
> unique circumstances falls short.

*Paul*, 2024 U.S. Dist. LEXIS 54142, at *21-22. As here, BCBSNC's argument also relied heavily

upon *Day*, whose relevance and applicability were rejected by the *Paul* court:

Defendant relies upon *Day v. Humana*, in which the District Court for the Northern District of Illinois granted defendant insurer's motion to strike class allegations in a case involving denial of claims for cancer treatment. 335 F.R.D. 181 (N.D. Ill. 2020). First, where the United States Court of Appeals for the Fourth Circuit has adopted "a strong policy that cases be decided on the merits," *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993), this court must be cautious in applying the reasoning of out-of-circuit cases striking allegations from pleadings. Second, that case is instructively distinguishable where it involved a fail-safe class, "which is defined so that whether a person qualifies as a member depends on whether the person has a valid claim," sought to include class members suffering from many different types of cancer, and did not plausibly allege that the policy was applied "in a uniform manner to deny PBRT treatment for all putative class members." *Day*, 335 F.R.D at 200.

*Id.* at *24-25.[5]

Similarly, in *Greenwell*, the court held: "Plaintiff's allegation that the Proton beam Medical Policy allows defendant Blue Cross's decisionmakers to overly rely on the policy's rationale to avoid deliberate decisionmaking is adequate, when taken in conjunction with his other allegations, at this stage of the proceedings." *Greenwell*, 505 F. Supp. 3d at 603 (citing *Day*, 335 F.R.D. at 194); *see also*, *Prolow v. Aetna Life Ins. Co.*, 510 F. Supp. 3d 1303, 1305 (S.D. Fla. 2021) (denying motion to dismiss class action alleging wrongful denial of claims for PBRT for treatment of breast cancer).

To overcome the Complaint's well-pled class allegations, Defendant posits that its plans have "different language and terms" and therefore the Court would need to make an individualized assessment for each class member. Def. Br., pp. 14-16. Defendant's speculation is premature and a red herring. Setting aside that Defendant's argument would require the Court to speculate about unproven facts regarding Defendant's plans at the pleading stage, variations in plan language (even if they do exist) would not alter Plaintiff's contention (which Defendant does not refute in its motion) that Defendant denied every claim for PBRT for prostate cancer under every plan by utilizing its blanket proton beam medical policy. Commonality is straightforward when it is claimed on the basis

---

[5]      The Sixth Circuit has adopted a similar policy to the one identified here by the *Paul* decision from Fourth Circuit in *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n. 1 (6th Cir. 1994) (citing *U.S. v. Shaffer Equipment Co.* with approval).

of a set of documents alleged to be essentially the same for all class members, such as Defendant's proton beam medical policy (or materially similar contract provisions). *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) (holding that plaintiff's allegations that deceptive practices were found in defendant's own brochures avoided individual variance among the class members); *Venerus v. Avis Budget Car Rental, LLC*, 723 F. App'x 807, 815 (11th Cir. 2018) ("While form contracts are ideal for class treatment, our threshold inquiry is whether all contracts are 'materially similar.'"). At this pleading stage, Plaintiff has alleged, and it must be accepted as true, that Defendant's denials were not tailored to the variety of BCBSNC plans offered. In fact, Plaintiff argues just the opposite: that irrespective of the language of any individual plan, the proton beam medical policy is used to categorically deny all claims for treatment of prostate cancer with PBRT.

There is also no basis for Defendant's assertion that individual medical circumstances would have to be considered for every member. Def. Br., pp 17-18. This is so both as a matter of law and of fact. Legally, the Sixth Circuit has held that "the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate that a class action is impermissible." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). Factually, Defendant itself never considered the individual medical circumstances of each class member when it denied PBRT claims for prostate cancer. Rather, it uniformly applied its proton beam medical policy to deny all claims for PBRT for prostate cancer. Where "the legality of the defendant's standardized conduct is at issue, the commonality factor is normally met." *Snow v. Atofina Chems., Inc.*, No. 01-cv-72648, 2003 U.S. Dist. LEXIS 27295, at *14 (citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984) ("Where a question of law refers to a standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement of Rule 23(a)(2) is usually met.").

Indeed, the claims Plaintiff alleges are derived from the core interpretation issue that is not individual in nature. *Jones v. NovaStar Fin. Inc.*, 257 F.R.D. 181, 194 (W.D. Mo. 2009) ("central questions concerning whether the fiduciaries breached their duties to the Plan are not individual" matters). Defendant has applied the same proton beam medical policy to deny PBRT the same way for the same disease and owes the same fiduciary duties to all participants and beneficiaries. As such, Defendant's "challenged actions are clearly either legal or illegal as to all members of the class." *Berger v. Nazametz,* Civ. No. 00-584, slip op. at 5 (S.D. Ill. Feb. 7, 2001), *aff'd on other grounds sub nom.*, *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755 (7th Cir. 2003). Determining whether Defendant's medical policy is unlawful as applied to all its members' plans will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (citing *Wal-Mart*, 564 U.S. at 390).

Conversely, Defendant's string cite of unpublished and decades-old-plus cases to the contrary for the proposition that ERISA claims are not suitable for class certification (Def. Br., pp. 16-17) is uncompelling. *See, e.g.*, *Collins v. Anthem, Inc.*, No. 20-cv-1969, 2024 U.S. Dist. LEXIS 48569, at *49 (E.D.N.Y. Mar. 19, 2024) (certifying class of members denied residential treatment services based upon medical necessity due to application of Anthem's guidelines); *Mattson v. Milliman, Inc.*, No. C22-cv-37, 2023 U.S. Dist. LEXIS 180961, at *10-11 (W.D. Wash. Oct. 6, 2023) (certifying class of retirement plan members who invested in particular identified funds); *Wolff v. Aetna Life Ins. Co.,* No. 4:19-cv-1596, 2022 U.S. Dist. LEXIS 94228, at *26 (M.D. Pa. May 25, 2022) (certifying class of members against whom Aetna wrongfully sought reimbursement of paid out disability benefits); *Kazda v. Aetna Life Ins. Co.*, No. 19-cv-2512, 2022 U.S. Dist. LEXIS 77880, at *34 (N.D. Cal. Apr. 26, 2022) (certifying class of members whose claims for liposuction treatment of lipedema were denied as cosmetic); *Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 153 (C.D. Cal. 2021) (certifying class of members whose claims for lumbar artificial disc replacement surgery were denied as experimental);

*Meidl v. Aetna, Inc.*, No. 15-cv-1319, 2017 U.S. Dist. LEXIS 70223, at *70 (D. Conn. May 4, 2017) (certifying class of members who were denied coverage of certain depression treatment as experimental). *See also*, Section E., *infra.*, pp. 19-20 (containing extensive list of case citations to properly certifiable ERISA class actions).

Defendant's reliance on *Day* in this regard is once again misplaced. Def. Br., p. 17. As argued above and as held in *Paul*, unlike here, *Day* sought to include class members with many different types of cancer. There is simply no reason that individual medical circumstances would ever be a subject of inquiry of these asserted class claims.

Finally, Defendant mentions in a footnote that failure to exhaust administrative remedies could also preclude class certification. Def. Br., p. 18 n. 4. A motion to dismiss or strike class allegations is not the proper avenue for a court to resolve factual disputes pertaining to the viability of an affirmative defense. *Bar's Products Inc. v. Bars Products Int'l Inc.*, 662 F. App'x 400, 413 (6th Cir. 2016) ("Courts should not dismiss based on an affirmative defense unless the undisputed facts conclusively establish an affirmative defense as a matter of law") (internal quotation marks omitted). In any event, the Sixth Circuit has permitted ERISA plaintiffs to bring class actions despite the exhaustion requirement. *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("where … the crux of an ERISA plaintiff's complaint concerns the methodology used to determine benefits, courts have recognized that the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23"); *see also*, *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-2086, 2018 U.S. Dist. LEXIS 181850 (M.D. Tenn. Oct. 23, 2018); *Ford v. Fed.-Mogul Corp.*, No. 2:09-cv-14448, 2015 U.S. Dist. LEXIS 3398, at *11 (E.D. Mich. Jan. 7, 2015).[6]

---

[6] Defendant's toe dip into a possible exhaustion of administrative remedies affirmative defense is further inapposite because the futility exception would excuse claimants from pursuing administrative reviews that are "demonstrably doomed to fail." *Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 151 (C.D. Cal. 2021) (*quoting Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1485 (9th Cir. 1995)).

### E. Defendant's Rule 23(b)(2) reprocessing argument is meritless. (Def. Br., pp. 18-21)

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff meets this standard "because by applying a uniform Medical Policy treating PBRT as 'investigational (experimental),' BCBSTN has acted and refused to act on grounds that apply generally to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class Members, and making final injunctive relief or corresponding declaratory relief appropriate respecting the proposed Class as a whole." D.E. # 1, ¶ 85. As alleged, Defendant has acted consistently in relying upon its proton beam medical policy in blanketly denying PBRT claims for prostate cancer for the class as a whole. As such, the final injunctive relief and corresponding declaratory relief Plaintiff seeks is "appropriate … with respect to the class as a whole." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998) ("actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies."); *see also*, *Morrow v. Washington*, 277 F.R.D. 172, 198 (E.D. Tex. 2011) ("Plaintiffs have set forth facts suggesting that Defendants' behavior was generally applicable to the class as a whole, making injunctive relief appropriate"); *Trull v. Dayco Prods, LLC*, 214 F.R.D. 394, 404-05 (W.D.N.C. 2003) (certifying under Rule 23(b)(2); final relief sought included declaration that Defendants may not deviate from bargaining agreements and injunctive relief to prevent deviation in the future); *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 778-82 (9th Cir. 1986) (certification pursuant to Rule 23(b)(2) was proper where class sought an injunction for improper calculation of retirement benefits because monetary relief from recalculation was "incidental" to the injunctive relief), *cert. denied*, 476 U.S. 1170 (1986).

Defendant, however, posits that the second element of Rule 23(b)(2)[7] is not met by re-reviewing or reprocessing the claims that were wrongfully denied by the proton beam medical policy (D.E. #1, ¶¶ 114(a), 116(d)) because reprocessing is "an impermissible remedy because it would merely 'initiate a process through which highly individualized determinations of liability and remedy are made' and does not provide 'final relief' sufficient to satisfy Rule 23(b)." Def. Br., p. 18.

First, Plaintiff is not required to put forth evidence to support class certification at this stage of the litigation. *Paul*, 2024 U.S. Dist. LEXIS 54142, at *23-24 (citing *Doctor v. Seaboard C. L. R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976)). Nor is Defendant's prediction regarding the future consistency of its own conduct on re-review relevant. Nevertheless, the second element of Rule 23(b) is plainly satisfied here. Plaintiff seeks an order declaring that Defendant's practices were a breach of the contracts of health benefits, and requiring Defendant to revise its proton beam medical policy to be consistent with current medical literature, research, studies, trials, and generally accepted standards of medical care and apply the new policy uniformly to the categorically denied claims. If Defendant's "practices are found to violate ERISA, the next step in the litigation will be to reprocess the class members' claims; if they are found to satisfy ERISA, this will foreclose any further action by Plaintiffs." *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, No. 15-cv-1319, 2021 U.S. Dist. LEXIS 178847, at *10-11 (D. Conn. Sept. 20, 2021).

Defendant's Rule 23(b)(2) argument relies upon two inapposite Seventh Circuit cases. Def. Br., pp. 20-21. First, in *Kartman v. State Farm Mut. Auto. Ins. Co.*, the court found that the proposed injunctive relief was impermissible because it did not provide "final injunctive relief" under Rule 23(b)(2). 634 F.3d 883, 893 (7th Cir. 2011). In offering this argument, however, Defendant fails to acknowledge that *Kartman's* supposed "finality" requirement has been repeatedly rejected in the

---

[7]    Plaintiff has alleged that the proposed action satisfies the requirements of Rule 23(b)(1), (2), and (3). D.E. # ¶¶ 84-89.

ERISA context. In *Medical Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, the court held:

> United counters that certification under subsection (b)(2) is nonetheless inappropriate because a reprocessing injunction would not actually result in a final benefit to all members of the class; instead, it would only provide for subsequent individualized determinations of specific plan language by which some members might receive plan benefits. (Dkt. No. 156 at 42-43.) The Seventh Circuit appears to have adopted the reasoning that United offers, holding that injunctive or declaratory relief sought under Rule 23(b)(2) must itself be *final* relief benefiting the whole class. *See, e.g.*, *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011). But other courts have expressly rejected this position in the ERISA context, holding that a reprocessing order is sufficient generalized relief under Rule 23(b)(2) even where every individual class member might not ultimately receive benefits upon reprocessing of their claims. *See Meidl*, 2017 U.S. Dist. LEXIS 70223, 2017 WL 1831916, at *22 (distinguishing *Kartman*); *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 509-10 (N.D. Cal. 2017 (same); *Wit*, 317 F.R.D. at 136-38 (same). In reliance on the persuasive reasoning of courts to have encountered this issue in ERISA cases, this Court holds that a reprocessing order and related relief are sufficient to satisfy the requirements of Rule 23(b)(2) under the circumstances.

332 F.R.D. 138, 154-55 (S.D.N.Y. 2019). Likewise, in *Meidl v. Aetna, Inc.*, the court held:

> Four district courts have certified classes under Rule 23(b)(2) where putative class members alleged that the defendants improperly denied health insurance coverage for a certain type of treatment, in violation of ERISA. First, *Z.D. ex rel. J.D. v. Grp. Health Co-op.* ("*Z.D. II*"), held that a subclass of insurance beneficiaries "satisfie[d] the requirements of Rule 23(b)(2)," where the plaintiffs sought "reprocess[ing]" of incurred claims. No. C11-1119 (RSL), 2012 U.S. Dist. LEXIS 149610, 2012 WL 5033422, at *2, 5 (W.D. Wash. Oct. 17, 2012). Second, *Wit v. United Behavioral Health* held that "certification under Rule 23(b)(2) [wa]s appropriate [where] all of the class members ha[d] been subjected to the same [written policy] which, according to Plaintiffs," was unlawful. 317 F.R.D. at 136 (N.D. Cal. 2016). *Wit* reasoned that,
>
> > [w]hile application of the [policy] may not have had an identical impact on every member of the proposed classes, the [policy] constitute[d] shared grounds for all of the members of the proposed classes to proceed on a collective basis. Moreover, the Plaintiffs' injury [could] be remedied for all class members by requiring [the defendant] to modify its [policy] and reprocess claims that were denied under the allegedly defective guidelines.
>
> 317 F.R.D. at 136 (internal quotation marks and citation omitted). Third, *Escalante v. California Physicians' Serv.* held that a proposed class was "certifiable under Rule 23(b)(2)," because, "[t]he question posed by Plaintiff—whether Defendant can categorize [a certain type of treatment] as 'investigational' under its current policies— is one that applies to the whole class," and because, "the injunctive and declaratory relief Plaintiff seeks is such that issuing such relief would apply to the class as a whole."

309 F.R.D. 612, 620 (C.D. Cal. 2015). Fourth, *Ballas v. Anthem Blue Cross Life & Health Ins. Co.* held that "Rule 23(b)(2) certification [wa]s proper," because,

> [i]n the event the court issues an order directing [the defendant] to reevaluate all class members' claims without applying the [challenged] policy, each putative class member will have an opportunity to have his or her claim reevaluated. Whether an individual seeks coverage for a procedure that has not yet occurred or reimbursement for a procedure for which he or she personally paid, the relief each class member will receive is an individualized reevaluation of the claim without reference to [the defendant's] uniform policy of denying all claims for the [ ] procedure on the basis that it is experimental or investigative.

No. CV-1200604 (MMM) (FFMx), 2013 U.S. Dist. LEXIS 199523, 2013 WL 12119569, at *13 (C.D. Cal. Apr. 29, 2013). The court is persuaded by the reasoning in these four cases, with respect to the applicability of Rule 23(b)(2) to a case in which defendants are alleged to have improperly denied health insurance claims for a certain type of treatment. The court follows these cases in concluding that Rule 23(b)(2) can apply where the relief sought is the reprocessing of health insurance claims.

The case law supports what is clear from the application of the plain language of Rule 23(b)(2) to the case at bar: The defendants have "acted or refused to act on grounds that apply generally to the class," by adopting and applying CPB 469 uniformly to class members' TMS claims, "so that," if Meidl's allegations are proven, "final injunctive relief," in the form of an order requiring the defendants to reprocess class members' TMS claims without applying CPB 469, would be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) thus provides an additional basis for class certification.

No. 15-cv-1319, 2017 U.S. Dist. LEXIS 70223, at *64-67 (D. Conn. May 4, 2017). In short, *Kartman*, a hail damage roofing case, is inapposite here. *See Meidl*, 2017 U.S. Dist. LEXIS 70223, at *68-69 (explaining how *Kartman* is inapposite to ERISA cases, in part, because "in an ERISA case, where insurance administrators unlawfully deny benefits, the appropriate remedy is 'typically' to 'return the claim' to the insurance plan administrator 'for reconsideration'.").

Nor does Defendant's other relied upon case, *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012), support its argument. In *Jamie S.*, the Court noted that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a

*different* injunction or declaratory judgment against the defendant." *Id.* at 499 (emphasis in original) (citing *Wal-Mart*, 564 U.S. at 360). The injunctive relief in that case "require[d] thousands of individual determinations of class membership, liability, and appropriate remedies." *Id.* at 499. Indeed, the relief sought in *Jamie S.*, unlike here, would have required both separate injunctive orders for each class member and "identifying disabled students who might be eligible for special-education services," "a complex, highly individualized task," that "cannot be reduced to the application of a set of simple, objective criteria." *Id.* at 496.

Plaintiff does not seek different injunctions or declaratory judgments against Defendant. Nor would there be individualized determinations of "class membership, liability, and appropriate remedies." Rather, class membership and liability consist of individuals who had their claim for treatment for prostate cancer denied by Defendant because PBRT was found to be not medically necessary, experimental, investigational, or unproven. D.E. # 1, ¶ 69. The class-wide remedy sought is injunctive or declaratory relief requiring Defendant to revise its proton beam medical policy and apply simple, objective criteria from the new proton beam medical policy universally to each PBRT prostate cancer claim that was not processed or was denied under the former policy. *Id.* at ¶ 114.

*Jamie S.* simply has no rational application to the facts, claims, or relief sought here. *See Harris v. Rainey*, 299 F.R.D. 486, 496 (W.D. Va. 2014) (differentiating *Jamie S.*'s complex inquiries to identify qualifying children from relief sought applying simple, objective criteria to a class); *Chi. Teachers Union, Local 1 v. Bd. of Educ. of Chi.*, 307 F.R.D. 475, 485 (N.D. Ill. 2015) (*Jamie S.* "dealt with proposed Rule 23(b)(2) classes that were so non-uniform they required wholly separate injunctions as to each class member and individual hearings to determine the basic question of liability"); *O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1200 (N.D. Ill. 2016) ("Proper common questions thus appear to include, at a minimum, whether 'treatment found to be medically necessary, and therefore mandatory for the state to provide, is nevertheless available in Illinois,' and 'whether there is a

system-wide failure to provide services that already have been prescribed and that, therefore the EPSDT program requires the State to provide.' Contrary to Norwood's contention, these are issues of 'systemic failure,' not 'individual violations of the same law' prohibited under [*Dukes* and *Jamie S.*]"); *Braggs v. Dunn*, 317 F.R.D. 634, 669 (M.D. Ala. 2016) (contrasted with *Jamie S.*, "[i]f the court grants relief, it will do so across the board, in one fell swoop. This relief will ensure that the statewide prison mental-health care system, with which all class members interact, is not operated pursuant to policies and practices that subject all prisoners to a substantial risk of harm. This is exactly the kind of case for which Rule 23(b)(2) was intended.").

In short, the class-wide relief pursuant to ERISA sought here to remedy Defendant's unlawful policy and associated systemic failure is precisely what the Supreme Court authorized as appropriate injunctive or declaratory relief under Rule 23(b)(2). *Wal-Mart*, 564 U.S. at 360.

## **CONCLUSION**

Because Plaintiff has a "more-than-conceivable chance of success on the merits," and for the reasons stated more fully herein, Defendant's motion should be denied in its entirety. *Owens v. Baltimore City State's Attys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006)).

Respectfully submitted, this the 9th day of July, 2024.

*/s/ Norris A. Adams, II*
Norris A. Adams, II
NC Bar No. 32552
nadams@essexrichards.com
**ESSEX RICHARDS, P.A.**
1701 South Boulevard
Charlotte, NC 28203
Telephone: (704) 377-4300
Facsimile: (704) 372-1357

Elizabeth K. Green
CA Bar No. 199634
egreen@greenhealthlaw.com

**GREEN HEALTH LAW, APC**
201 N. Brand Blvd., Suite 200
Glendale, CA 91203
Telephone: (818) 722-1164

Stephanie A. Casey
FL Bar No. 97483
scasey@colson.com
**COLSON HICKS EIDSON**
255 Alhambra Circle, PH
Coral Gables, FL 33134
Telephone: (305) 476-7400

Timothy J. Rozelle
CA Bar No. 298332
trozelle@kantorlaw.net
**KANTOR & KANTOR, LLP**
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525

Kaci Garrabrant
TN Bar No. 039026
kgarrabrant@buchanandisability.com
**ERIC BUCHANAN & ASSOCIATES,
PLLC**
414 McCallie Avenue
Chattanooga, TN 37402
Telephone: (423) 634-2506

*Attorneys for Plaintiff William Mark Cumalander,
on behalf of himself and all others similarly situated*

## CERTIFICATE OF SERVICE

This is to certify that I the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF filing system which automatically sends email notifications of such filing to the following attorneys of record:

Gwendolyn C. Payton
KILPATRICK TOWNSEND & STOCKTON
gpayton@ktslaw.com

Marc H. Harwell
HARWELL & HURST PLLC
marc@harwelllawgroup.com

Stephanie N. Bedard
KILPATRICK TOWNSEND & STOCKTON
sbedard@ktslaw.com

This the 9th day of July, 2024.

/s/ *Norris A. Adams, II*