| | |
|---|---|
| WILLIAM CUMALANDER, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-176 |
| Plaintiff, | Judge Travis R. McDonough |
| v. | Magistrate Judge Christopher H. Steger |
| BLUECROSS BLUESHIELD OF TENNESSEE, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

Before the Court is Defendant BlueCross BlueShield of Tennessee, Inc.'s motion to dismiss and strike class allegations (Doc. 48). For the reasons set forth below, Defendant's motion (*id.*) will be **DENIED**.

### I.   BACKGROUND

In September 2022, Plaintiff William Cumalander was diagnosed with prostate cancer. (Doc. 1, at 9.) Plaintiff's physician, Dr. William Mendenhall, recommended that Plaintiff undergo Proton Beam Radiation Therapy ("PBRT") at the University of Florida Proton Therapy Institute. (*Id.*) PBRT, like conventional radiation therapy, uses radiation to destroy cancer cells and stop the tumor from growing.[1] (*Id.* at 3.) However, PBRT is superior to traditional radiation treatment because it is more precise: the radiation targets only the tumor and therefore does not

---

[1] The allegations regarding the properties of PBRT come from Plaintiff's complaint (Doc. 1) and are accepted as true at this phase in the litigation. The Court makes no finding as to the efficacy of PBRT.

harm healthy tissue. (*Id.*) Because of this precision, patients can safely receive higher doses of radiation while also minimizing the negative side effects that come with traditional radiation therapy. (*Id.*) In the case of prostate cancer, this means minimizing harm to the gastrointestinal system and urinary tract. (*Id.* at 4.) PBRT was approved by the Food and Drug Administration in 1988 to treat localized tumors and is currently used by forty-two proton therapy centers across the United States. (*Id.*) Prostate cancer is the type of cancer most treated by PBRT. (*Id.* at 5.)

Plaintiff was insured through Defendant and requested approval to use PBRT to treat his prostate cancer. (*Id.* at 2, 9.) Defendant denied Plaintiff's request for benefits for PBRT treatment because, per Defendant's PBRT Medical Policy, using PBRT to treat prostate cancer is an "investigational" treatment.[2] (*See id.*; Doc. 49-1, at 2.) Dr. Mendenhall appealed the initial decision, arguing that PBRT is not investigational and was "medically necessary and [] superior care for [Plaintiff's] prostate cancer." (Doc. 1, at 9–11.) Defendant again denied Plaintiff's request and maintained the PBRT was an investigational treatment which it was not obligated to cover. (*See id.*) Plaintiff went ahead with PBRT, paying $43,185.00 out of pocket. (*Id.* at 11, 13.) Plaintiff's treatment was successful in treating his prostate cancer and "[he] experienced few if any toxicities from PBRT." (*Id.* at 11.)

Plaintiff's insurance plan ("The Plan") provides that a treatment that fails to meet four criteria is considered "investigational." (*Id.* at 7.) Plaintiff claims that all four criteria are met for PBRT to treat prostate cancer and therefore should be covered under the terms of the Plan. (*Id.* at 8.) Plaintiff further alleges that Defendant "systematically relied on its internally developed Proton Beam Medical Policy to inappropriately justify applying more restrictive

---

[2] In denying Plaintiff's request for approval, Defendant noted that PBRT could be approved if "there are unique circumstances applicable to a specific member that would make use of the proton beam therapy medically appropriate." (Doc. 1, at 9.)

coverage guidelines than allowed for under the plain language of the relevant [] Plan." (*Id.*)

On July 20, 2023, Plaintiff filed his putative class action complaint in the Eastern District of North Carolina.[3] (*Id.* at 1–2.) Plaintiff asserts two causes of action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. for: (1) wrongful denial of benefits, and (2) breach of fiduciary duty. (*Id.* at 18–21.) Plaintiff seeks a variety of remedies including: (1) payment of health benefits owed under the plan, (2) an injunction requiring reprocessing of all wrongfully denied claims, and (3) disgorgement of profits Defendant made as a result of wrongfully denying claims for PBRT. (*Id.* at 21–23.)

Plaintiff further seeks to represent a class consisting of:

> All persons covered under ERISA-governed plans, administered or insured by BCBSTN, whose pre-service or post-service requests to BCBSTN for benefits for proton beam radiation therapy for the treatment of prostate cancer were denied at any time within the applicable statute of limitations, or whose requests to BCBSTN for PBRT will be denied in the future, based upon a determination by BCBTN that PBRT is not medically necessary or is experimental, investigational, or unproven.

(*Id*. at 14.) Plaintiff alleges that the definition of an "investigational" treatment is "the same or substantially similar" across all plans. (*Id*.)

On June 18, 2024, Defendant moved to partially dismiss Plaintiff's claims and strike Plaintiff's class allegations. (Doc. 48.) Defendant argues that Plaintiff's breach-of-fiduciary-duty claim is barred as a matter of law. (Doc. 49, at 11.) Defendant further argues that Plaintiff is barred from seeking "disgorgement of profits." (*Id.* at 13.) Finally, Defendant asks that the Court strike Plaintiff's class allegations because the proposed class cannot satisfy Rule 23(b)'s commonality requirement, and the remedy of reprocessing of claims is not available in ERISA class actions. (*Id*. at 6–7.) Defendant's

---

[3] On May 21, 2024, this case was transferred to the Eastern District of Tennessee. (Doc. 25.)

motion is now ripe.

## II. STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"Generally, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018) (citing Fed. R. Civ. P. 12(d)). However, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10. Furthermore, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

### III. ANALYSIS

#### A. Motion to Dismiss

Defendant first argues that the Court should dismiss Plaintiff's claim for breach of fiduciary duty because the equitable relief Plaintiff seeks is duplicative of his claim for improperly denied benefits. (*See* Doc. 49 at 11–13.) Defendant further argues that Plaintiff's "disgorgement of profits" remedy should be dismissed because recovery of wrongfully denied benefits will make him whole. (*See id*. at 13–15.)

##### *i.* Breach of Fiduciary Duty

ERISA provides that a plaintiff may bring a civil action "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. §

1132(a)(1)(B). This is the primary method of recovery in individual ERISA cases. *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015). However, the statute further provides that plan administrators have a fiduciary duty to plan beneficiaries. *See* 29 U.S.C. § 1002(21)(A); *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) ("[W]hen an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA fiduciary[.]") (citation and internal quotations omitted). A plan beneficiary alleging that an administrator breached this fiduciary duty may bring an action under 29 U.S.C. § 1132(a)(3) "to enjoin any act or practice which violates . . . the plan, or [] to obtain other appropriate equitable relief." This provision is sometimes referred to as the "catchall provision." *Paul v. Blue Cross Blue Shield of N. Carolina*, 725 F. Supp. 3d 505, 517 (E.D.N.C. 2024). The statute therefore provides plaintiffs with a way to recover the monetary value of their wrongfully denied benefits and, if that is not enough to make them whole, "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3).

In *Varity Corp. v. Howe*, the Supreme Court explained that when a plaintiff can obtain adequate relief under the wrongful-denial-of-benefits provision, "further equitable relief . . . normally would not be appropriate." 516 U.S. 489, 515 (1996). The Sixth Circuit has therefore held that when a plaintiff can be made whole by the recovery of wrongfully denied benefits, he cannot also bring a breach-of-fiduciary-duty claim under the catchall provision. *See Rochow*, 780 F.3d at 372–73 ("[T]he availability of relief under [the catchall provision] is contingent on a showing that the claimant could not avail himself or herself of an adequate remedy pursuant to [the wrongful-denial provision].") (citing *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir.1998)). However, "[w]here a claimant asserts an injury separate and distinct from the denial of benefits, then dual ERISA claims and remedies may be appropriate." *Brown*

*v. United of Omaha Life Ins. Co.*, 661 F. App'x 852, 860 (6th Cir. 2016).

Here, Defendant argues that Plaintiff's injury can be fully remedied by recovering benefits and therefore his breach-of-fiduciary-duty claim must be dismissed. (Doc. 49, at 11.) The Court disagrees. In *Hill v. Blue Cross & Blue Shield of Michigan*, the plaintiffs in a putative class action alleged that the defendant "violated its fiduciary duties to [class] members by processing emergency-medical-treatment claims in a manner contrary to the terms of the Program documents." 409 F.3d 710, 717 (6th Cir. 2005). The plaintiffs brought claims for both wrongful denial of benefits and breach of fiduciary duty. *See id.* The plaintiffs sought a class-wide injunction under the catchall provision to "require[] [the defendant] to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses." *Id.* at 718. The Sixth Circuit found that both claims could proceed because both monetary relief and injunctive relief were necessary to make the plaintiffs whole. *See id.* The court explained that when a class of plaintiffs allege a systemic error by a defendant, "an award of benefits to a particular [plaintiff] based on an improperly denied claim . . . will not change the fact that [the defendant] is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims" and therefore "[o]nly injunctive relief of the type available under [the catchall provision] will provide the complete relief sought by [p]laintiffs." *Id.*

The facts alleged here are fundamentally the same as those in *Hill*: Plaintiff claims that Defendant is using an incorrect methodology to categorically deny claims for PBRT treatment for prostate cancer. (*See* Doc. 1, at 8.) Therefore, class-wide relief requires both individual damages and injunctive relief to ensure that Defendant does not continue to use its allegedly

7

Case 1:24-cv-00176-TRM-CHS    Document 54    Filed 12/16/24    Page 7 of 15    PageID #: 135

flawed methodology to deny pending claims.[4] *See Nixon v. Anthem, Inc.*, No. 3:19-CV-00076-GFVT, 2020 WL 4910290, at *6 (E.D. Ky. Aug. 18, 2020) ("Plaintiffs may [also] seek relief under [the catchall provision] to the extent an injunction is necessary to preclude Defendants from continuing to uniformly deny coverage [for a medical procedure]").

Because Plaintiff seeks both individual damages and plan-wide injunctive relief for the proposed class, Defendant's motion to dismiss Plaintiff's breach-of-fiduciary-duty claim will be denied.

### *ii.* **Disgorgement of Profits**

As noted above, ERISA provides that a plaintiff may recover wrongly denied benefits and, if that cannot make him whole, other appropriate equitable relief. Disgorgement of profits is a form of relief available under the catchall provision. *See Rochow*, 780 F.3d at 371. However, the Sixth Circuit has made clear that "allowing [a plaintiff] to recover disgorged profits under [the catchall provision], in addition to his recovery [for wrongful denial of benefits], based on the claim that the wrongful denial of benefits also constituted a breach of fiduciary duty, would . . . result in an impermissible duplicative recovery." *Id*. As a result, to

---

[4] Defendant argues that "[Plaintiff's] claims do not fall into the narrow *Hill* exception" and that this case is more similar to *Outward v. Eaton Corp. Disability Plan for U.S. Employees*, 808 F. App'x 296 (6th Cir. 2020). (Doc. 53, at 6.) The Court disagrees. In *Outward*, the Sixth Circuit rejected a plaintiff's attempt to bring a claim under the catchall provision in addition to a wrongful-denial claim. 808 F. App'x 296. However, *Outward* involved an individual plaintiff seeking relief only for herself. *See id*. The Sixth Circuit made clear that typically an individual plaintiff seeking wrongly denied benefits cannot bring a claim under the catchall provision but a class seeking plan-wide relief may be able to. *See id*. at 315 (noting that though the catchall provision is appropriate for "plan-wide injunctive relief" it was clear that "the change [the plaintiff] seeks is simply and ultimately a re-adjudication of the denial of her claim for benefits."); *Fenwick v. Hartford Life & Accident Ins. Co.*, 841 F. App'x 847, 860 (6th Cir. 2021) ("[T]he exception we made in *Hill* to the general rule prohibiting duplicative equitable claims does not apply because [the plaintiff] brought her claim as an individual rather than a class."). Here, Plaintiff brought a putative class action seeking plan-wide relief, as in *Hill*.

seek both wrongly denied benefits and disgorgement, a plaintiff must "show[] that [the wrongful-denial] remedy is inadequate." *Id.*

Plaintiff agrees that "he may not ultimately recover both wrongfully denied benefits [] and, specifically, disgorgement of profits under [the catchall provision], as they are considered duplicative relief following *Rochow*." (Doc. 52, at 6.) However, Plaintiff argues that there is no way of telling if recovery of wrongfully denied benefits will make him whole at this early stage of the proceedings. (*Id.* at 6–7.) The Court agrees. *Rotchow* was decided only after the plaintiff had been awarded benefits and it was clear that he had been made whole. *See* 780 F.3d at 366–68. Similarly, in *Neaton v. Hartford Life & Accident Insurance Company,* the court determined that the plaintiff had been made whole only after he had been awarded benefits. No. 1:09-CV-213, 2015 WL 13755900, at *3 (E.D. Tenn. Mar. 19, 2015). Because the Court cannot say with certainty at this early phase that Plaintiff will be made whole through recovery of wrongfully denied benefits, it is not appropriate to dismiss Plaintiff's disgorgement of profits remedy at this time. *See Nixon*, 2020 WL 4910290, at *6 (declining to dismiss a plaintiff's claim for disgorgement of profits "because it has yet to be determined whether [the] [p]laintiffs will recover under § 1132(a)(1)(B)").

Because it is not certain at the motion-to-dismiss phase that Plaintiff will be made whole by awarding him wrongly denied benefits, Defendant's motion to dismiss Plaintiff's disgorgement-of-profits remedy will be denied with leave to refile.

### B.    Motion to Strike Class Allegations

Defendant argues that Plaintiff's class allegations should be struck because Plaintiff cannot establish commonality. (Doc. 49, at 16.) Defendant further argues that class-wide reprocessing of claims is not an available remedy in an ERISA class action as a matter of law.

9

(*Id.* at 23.)

Federal Rule of Civil Procedure 12(f) allows courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Sixth Circuit has held that courts may grant a motion to strike class allegations before a plaintiff has moved to certify a class. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). However, it has also cautioned that courts have "the duty of engaging in a rigorous analysis of the question [of class certification]." *Id.* (citation and internal quotations omitted). District courts therefore should only grant a motion to strike if "the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claims succeed in class action form." *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 575 (M.D. Tenn. 2020) (cleaned up). Given this stringent standard, motions to strike class allegations are generally denied in all but the most obvious cases. *See Progressive Health & Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 246 (S.D. Ohio 2017) ("courts should exercise caution when striking class action allegations based solely on the pleadings.") (citation and internal quotations omitted). Instead, the typical course of action will be to defer deciding class certification issues until after class discovery, when the record is better developed. *See Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 765 (N.D. Ohio 2020) (collecting cases).

### *i.* **Commonality**

Federal Rule of Civil Procedure 23 allows "members of a class" to sue or be sued "on behalf of all members" of the class. Fed. R. Civ. P. 23(a). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). For a class to be certified, the plaintiffs must prove they meet the requirements of both Rule 23(a) and 23(b). *See Sprague v.*

*Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b).").

To proceed as a class under Rule 23(a), a plaintiff seeking class certification must first show that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see Dukes*, 564 U.S. at 349 (describing the requirements as "numerosity, commonality, typicality, and adequate representation").

To establish commonality, "named plaintiffs must show that their claims depend on a common contention that is of such a nature that it is capable of classwide resolution." *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015). However, not just any common facts or questions will do. As the Supreme Court noted in *Dukes*, "any competently crafted class complaint literally raises common questions." 564 U.S. at 349 (citations omitted). Instead, the fact or question must be one such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. A question establishing commonality "typically will affect at least one element of the claims." *Doster v. Kendall*, 54 F.4th 398, 430 (6th Cir. 2022) (citation omitted). Therefore, to evaluate commonality, the Court must look to what questions need to be answered to advance the litigation. *See Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013) (noting that commonality requires "the capacity of a classwide proceeding to generate common answers apt

to drive the resolution of the litigation").

Plaintiff's allegations boil down to simple proposition: Defendant wrongly classified PBRT as "investigational"—contrary to the terms of the Plan—in order to summarily deny all requests for PBRT. (*See* Doc. 1, at 13 ("[Defendant] categorically wrongfully denies all prior approval requests and claims for PBRT for prostate cancer.").) Plaintiff further alleges that all plans include the same definition of "investigational." (Doc. 1, at 14.) If the Plan language is the same for all class members, determining whether PBRT for prostate cancer is "investigational" will also determine whether Defendant's denial of all the class members' claims is wrongful. This is the exact type of common answer which would move the litigation forward.

Defendant disputes that this process occurred, arguing that it "exercised discretion in determining whether the member was entitled to the benefit at issue and decided whether the proposed treatment was 'medically necessary' based on the member's individual medical circumstances." (Doc. 49, at 18.) Defendant's policy states that "[PBRT] for the treatment of . . . [prostate cancer] is considered *investigational*." (Doc. 49-1, at 2 (emphasis in original).) However, the policy goes on to state that Defendant may still approve PBRT if "there are unique clinical circumstances applicable to a specific member that would make use of [PBRT] medically appropriate." (*Id.*) Defendant further argues that "there are a wide variety of plans with varying plan language" and therefore "the Court would necessarily have to examine the language of each putative class member's plan." (Doc. 53, at 11.) This is a quintessential dispute of fact that requires further development. It is therefore not appropriate to address this class certification issue until after class discovery has occurred. *See Fishon*, 501 F. Supp. 3d at 575 (noting that courts "should defer decision on certification pending discovery if the existing

12
Case 1:24-cv-00176-TRM-CHS   Document 54   Filed 12/16/24   Page 12 of 15
PageID #: 140

record is inadequate for resolving the relevant issues"). Defendant is free to renew its arguments if Plaintiff moves to certify the class.

### *ii.* **Reprocessing as a Remedy**

Rule 23(b)(2) provides that a class action is appropriate if "the [defendant] has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Numerous courts have found that an injunction ordering class-wide reprocessing of insurance claims is appropriate injunctive relief in ERISA class actions. *See*, *e.g.*, *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486 (N.D. Cal. 2017); *Med. Soc'y of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138 (S.D.N.Y. 2019); *Hendricks v. Aetna Life Ins. Co.*, 344 F.R.D. 237 (C.D. Cal. 2023). Indeed, "reprocessing is the usual remedy in [ERISA] cases." *Kazda v. Aetna Life Ins. Co.*, No. 19-CV-02512-WHO, 2022 WL 1225032, at *6 (N.D. Cal. Apr. 26, 2022).

Nevertheless, Defendant argues that "[c]lass-wide reprocessing is not available as a remedy because it requires an individualized claims review of each remanded claim." (Doc. 49, at 23.) Defendant further argues that class-wide reprocessing is foreclosed by *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023). In *Wit*— an ERISA class action—the Ninth Circuit found that class-wide reprocessing of claims was not an available remedy for that particular proposed class. *See id.* at 1084. Defendant suggests that *Wit* stands for the proposition that class-wide reprocessing is *never* a remedy in ERISA class actions because it is possible that a plaintiff's claims could be denied for independent reasons upon remanding them for reprocessing. (Doc. 49, at 23.)

There are several problems with Defendant's arguments. First, the Court is not bound by

the holdings of the Ninth Circuit. Second, and more importantly, *Wit* did not hold that reprocessing could *never* be a remedy in an ERISA class-action, only that it was not a remedy for that *particular* class. In *Wit*, the proposed class was "defined as members whose claims were denied *in part* based on the [allegedly improper] Guidelines." 79 F.4th at 1085 (emphasis added). Because the class contained members whose "claims could have been denied for reasons wholly independent of the [allegedly improper] [g]uidelines," the Ninth Circuit reasoned that reprocessing was not an appropriate remedy.[5] *Id.* at 1085–86. Here, the proposed class consists only of members whose claims were denied "based upon a determination by BCBTN that PBRT is not medically necessary or is experimental, investigational, or unproven" and therefore does not contain members whose claims could have been denied for other reasons.[6] (Doc. 1, at 14.)

Defendant next argues that reprocessing is not "final relief" under Rule 23 because it requires further individualized proceedings. Again, the Court disagrees. Defendant cites no binding precedent—or even on-point persuasive precedent—holding that reprocessing of claims does not constitute "final relief" in the ERISA context.[7] (*See generally* Doc. 49.) Indeed,

---

[5] Indeed, the Ninth Circuit explicitly stated that claim reprocessing *would* be appropriate if "a plaintiff has shown that his or her claim was denied based on the wrong standard and that he or she might be entitled to benefits under the proper standard." *Wit*, 79 F.4th at 1084. That is precisely what Plaintiff alleges.

[6] Other district courts—including those in the Ninth Circuit—have rejected Defendant's argument that *Wit* held that class-wide reprocessing is never an available remedy in an ERISA class action. *See*, *e.g.*, *C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, 705 F. Supp. 3d 1273, 1283–84 (W.D. Wash. 2023) (considering and rejecting BCBS's identical arguments on class-wide reprocessing); *Kazda*, 2023 WL 7305038, at *9 (rejecting the argument that *Wit* barred class-wide reprocessing "where the class has been limited to individuals whose claims were denied based solely on the [policy] at issue."). The Court agrees with the well-reasoned conclusions of those courts.

[7] Defendant cites two out-of-circuit cases in support of its argument, neither of which was an ERISA class action. (*See* Doc. 49, at 25 (citing *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 886 (7th Cir. 2011).)

reprocessing is the typical remedy in ERISA cases, including ERISA class actions. *See Med. Soc'y of the State of New York*, 332 F.R.D. at 154 ("In numerous ERISA cases, courts have certified classes [] where defendants allegedly employed an unlawful general policy that affected the process for adjudicating all claims of the class, and plaintiffs sought [] injunctive relief requiring reprocessing of the claims.") (collecting cases). The Court sees no reason why a single injunction remanding the class members' claims for reprocessing does not constitute "final relief" in an ERISA proceeding.

Because class-wide reprocessing is an available remedy, Defendant's motion to strike on this basis will be denied.

### IV. CONCLUSION

For the above reasons, Defendant's motion to dismiss and strike Plaintiff's class allegations (Doc. 48) is **DENIED**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**