# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

WILLIAM MARK CUMALANDER, *on behalf of himself and all others similarly situated*,

        Plaintiffs,

    v.

BLUECROSS BLUESHIELD OF TENNESSEE, INC.,

        Defendant.

Civil Action No. 1:24-cv-00176-TRM-CHS

**DEFENDANT BLUECROSS BLUESHIELD OF TENNESSEE, INC.'S
SUPPLEMENTAL BRIEF ON *CLIPPINGER***

1

# I. INTRODUCTION

In *Clippinger v. State Farm Automobile Insurance Co.*, 173 F.4th 817 (6th Cir. 2026), the en banc Sixth Circuit joined five other federal appellate courts[1] in significantly tightening the commonality and predominance analysis required by Rule 23. *Clippinger* reversed the district court's certification of a car insurance valuation class because individualized questions predominated over common ones, because the plaintiff's allegedly common questions lacked cohesiveness and centrality, and because the district court's proposed workaround to these issues violated the Rules Enabling Act. While *Clippinger* arose in the auto insurance context, it applies broadly to any Rule 23 class action in the Sixth Circuit, including ERISA benefits cases.

*Clippinger* reiterates what Defendant BlueCross BlueShield of Tennessee, Inc. ("BCBST") already emphasized in its opposition to Cumalander's Motion for Class Certification, Doc. 97: (1) Cumalander cannot establish commonality among the proposed class because BCBST's policy addressing coverage of proton beam therapy ("PBT" and "PBT Policy") requires individualized, member-specific determinations; (2) individualized medical questions predominate over class-wide issues; and (3) BCBST's conduct was not "generally applicable" across the putative class in a manner that would merit certification.

# II. ARGUMENT

## A. Based on *Clippinger*, the Court would be correct to reject Cumalander's allegedly common questions because they lack cohesiveness and centrality.

Cumalander claims that the core common question in this case is whether BCBST's PBT Policy improperly treats PBT for prostate cancer as "investigational." The en banc *Clippinger*

---

[1] *See Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107 (9th Cir. 2025); *Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461 (4th Cir. 2025); *Schroeder v. Progressive Paloverde Ins. Co.*, 146 F.4th 567 (7th Cir. 2025); *Drummond v. Progressive Specialty Ins. Co.*, 142 F.4th 149 (3d Cir. 2025); *Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414 (5th Cir. 2023).

court held that allegedly common questions like this one must clear two hurdles: (1) it must yield a "*cohesive* yes-or-no answer for all class members," and (2) it must yield an answer "'*central*' to the class's common claims." *Clippinger*, 173 F.4th at 827 (citations omitted). Cumalander's common question cannot surpass either hurdle.

First, Cumalander's allegedly common question fails *Clippinger*'s cohesiveness requirement because, even without BCBST's PBT Policy, each class member's plan requires an individualized inquiry that necessarily precludes a uniform yes-or-no answer. In order to be covered, each individual member's claim must be medically necessary and satisfy a host of other requirements—including, for example, eligibility or that the treatment will be provided by a qualified provider. Accordingly, invalidation of the PBT Policy would not automatically result in payment of the class members' PBT claims but instead would lead to an individual evaluation of each claim under each member's respective plan.

This common question is also not cohesive because it does not yield a yes-or-no answer for all members. One reason it fails is because it ignores the fact that BCBST's PBT Policy covers PBT when there are "unique clinical circumstances applicable to [a class member] that would make use of [PBT] medically appropriate." Dkt. 74-9. Under the policy, BCBST *approved* requests for coverage of PBT for prostate cancer for several members. *See* Doc. 97 at 18. BCBST's application of its PBT Policy to those members did not result in a consistent "no," but rather resulted in a "yes" for some members.

Second, Cumalander's allegedly common question fails *Clippinger*'s centrality requirement because the answer will not "drive the resolution" of the class's contract-based claims. *Clippinger*, 173 F.4th at 829 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In *Clippinger*, the plaintiff alleged that State Farm breached various insurance policies by failing

3

to pay the actual cash value of total loss vehicles. The district court agreed, reasoning that the answer to this question was "central" to the class claims because "it would *categorically* resolve" whether State Farm's valuation adjustment breached the policy's terms for all class members. *Id.* at 829. The Sixth Circuit rejected this analysis and reversed the district court's certification order because "a jury's answer to the question whether advertised prices match sales prices as a *general* matter will not 'resolve' whether State Farm breached its promise to pay actual cash value to any *specific* class member." *Id.* at 830.

Cumalander's proposed common question suffer from the same fatal flaw: a jury's answer to the question of whether BCBST's PBT Policy improperly designates PBT as investigational will not "resolve" whether BCBST's denial was wrongful as to each specific class member, because BCBST must examine each class member's individual medical circumstances to determine they would be entitled to coverage, even without the PBT Policy. Cumalander's claims for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) and for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) both require evidence of a breach as to that specific member, not just in the abstract. *See* 29 U.S.C. § 1132(a)(1)(B) (authorizing a member "to recover benefits due *to him* under the terms of *his* plan" (emphases added)); *see also Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 433 (6th Cir. 2009) (reversing certification of an ERISA breach of fiduciary duty class because adjudication required an "individualized review of every claim that was denied"); *Wit v. United Behav. Health*, 79 F.4th 1068, 1084 (9th Cir. 2023) (stating in an ERISA denial of benefits and breach of fiduciary duty case that a plaintiff must "show[] that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard"). The alleged wrongfulness of each denial turns on each member's individual medical history and clinical profile, not just the PBT Policy's general validity. That

member-by-member inquiry is precisely what *Clippinger* says destroys centrality.

Cumalander's entire argument rests on characterizing BCBST's conduct as a "blanket denial" similar to cases such as *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 244 (D. Conn. 2018) (finding issues of fact as to whether a plan administrator acted in an arbitrary and capricious manner by applying a medical policy finding a treatment investigational without considering the unique medical history of the member). Doc. 99 at 6. But under *Clippinger*, it is appropriate for this Court to look beyond Cumalander's labels and examine what actually this Court must decide to resolve the class's claims. Here, four independent radiation oncologists individually reviewed Mr. Cumalander's case and individual medical history, and the records of other putative class members show similarly individualized reasoning. Even if BCBST were ordered to re-review the class members' claims based on a different medical policy or without regard to a medical policy altogether (Plaintiffs are unclear on what remedy they actually seek on behalf of the class), BCBST must still review each claim individually to ensure that it satisfies the myriad of other plan requirements, including that the member is eligible, that it is a medically necessary treatment, and that the provider recommending the treatment is qualified. *Clippinger* teaches that when a breach determination requires a "case-by-case comparison"—here, whether each member's specific medical circumstances warranted coverage—there is no common question capable of resolving the class's claims in "one stroke." 173 F.4th at 831 (citation omitted).

Cumalander's allegedly common question fails *Clippinger*'s centrality prong because the answer will not "drive the resolution" of the class's contract-based claims. It also lacks cohesion because each class member's plan requires an individualized inquiry that necessarily precludes a uniform yes-or-no answer, as demonstrated by the "yes" that some members received. Plaintiff's common question cannot meet either prong of the Rule 23(a) commonality analysis.

**B.** *Clippinger* **confirms that Plaintiff's class claims fail because individualized medical determinations predominate.**

Even if Cumalander were able to demonstrate common issues existed that could "drive the resolution" of the class's ERISA claims towards a yes-or-no answer, he cannot show that those common issues predominate over individualized issues. *Clippinger* reemphasized that under Rule 23(b)(3)'s "more demanding" predominance standard, where member-by-member issues outweigh class-wide issues, certification is improper. 173 F.4th at 832.[2]

One question "dominated" in *Clippinger*: "What was the actual cash value (that is, the fair market value) of each class member's vehicle?" *Id.* Because resolving this question required an "independent and individualized assessment" of each member's situation, including the "'unique characteristics' of each used car," the Sixth Circuit held that Rule 23(b)(3)'s predominance requirement could not be satisfied. *Id.* at 832-33.

Here, one question "dominates" all others: should each putative class member's claims for PBT have been covered based on the individualized information that member submitted to BCBST? And the answer to that question turns on BCBST's review of each putative class member's distinct medical facts. Some members had no prior history of pelvic radiation, some lacked genetic risk factors, some lacked dosimetric comparison plans, some had different Gleason scores and varying levels of disease severity, and some had not yet had biopsies confirming local recurrence. The record shows that BCBST took those unique clinical circumstances into consideration when administering each claim, Doc. 97 at 18-21. BCSBT's reasons for each denial, even if the reasoning referenced BCBST's Policy, were clinically distinct. Even if the PBT Policy

---

[2] Cumalander claims he seeks to certify a Rule 23(b)(3) money damages class "in the alternative" to certification under Rules 23(b)(1) and 23(b)(2). *See* Doc. 91 at 28. But because Cumalander's prayer for relief seeks not only claims reprocessing but also payment of benefits, Compl. ¶ 116(g), Cumalander is precluded from recovery under either Rule 23(b)(1) or (b)(2) and must satisfy the more rigorous predominance requirements of Rule 23(b)(3). *Wal-Mart*, 564 U.S. at 360-61.

is invalidated, each putative class member's claim must satisfy numerous other criteria imposed by the plan, including member eligibility, medical necessity, and provider eligibility.

Under *Clippinger*, these individualized inquiries are not merely damages-phase issues that can be deferred; they go to the breach element itself and "matter more than any common ones" because whether BCBST wrongfully denied any specific claim requires examining what the member's record showed about his unique circumstances. *Clippinger*, 173 F.4th at 832.

Five other circuit courts are aligned with *Clippinger* in rejecting class certification in insurance valuation cases on commonality and predominance grounds, and courts have applied this framework to preclude certification in ERISA benefits cases. *See Ambrosio*, 154 F.4th 1107; *Freeman*, 149 F.4th 461; *Schroeder*, 146 F.4th 567; *Drummond*, 142 F.4th 149; *Sampson*, 83 F.4th 414. In *Zieba v. Health Care Service Corp.*, 2025 IL App (1st) 242423-U, the plaintiff sought out-of-network coverage for Lyme disease treatment, and the third party plan administrator allegedly returned the coverage decisions late and without itemization. *Id.* ¶¶ 1–13, *appeal denied*, 487 Ill. Dec. 777 (2026). The plaintiff brought a putative class action against the administrator, alleging claims for breach of contract and other state law claims. *Id.* ¶¶ 16-17. Citing the rejection of class certification in *Schroeder v. Progressive Paloverde Insurance Co.*, 146 F.4th 567, 576–78 (7th Cir. 2025), the court found the plaintiff failed to meet her burden of proving predominance because "a multitude of individual inquiries would have to be performed, ranging from damages . . . to whether [the plan administrator] improperly denied individual claims." *Id.* ¶ 37.

So too here. As in *Zieba*, Cumalander's ERISA claims "depend on the circumstances of each case, each insurance claim, and the impact on each individual plaintiff." *Id.* ¶ 47. Merely analyzing whether BCBST applied its PBT Policy to the claim is just the "starting point" and will not establish BCBST's liability. *Id.* ¶ 43.

7

**C.** *Clippinger* **shows that Plaintiff is not entitled to certification under Rule 23(b)(1).**

While *Clippinger* primarily addressed Rule 23(a)(2)'s commonality prerequisite and Rule 23(b)(3)'s predominance requirement, the Sixth Circuit's analysis of what constitutes a true "common" question also shows that certification under Rule 23(b)(1) is not appropriate. Rule 23(b)(1) states that a class may be certified if there is a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct." Fed. R. Civ. P. 23(b)(1). But this is not a genuine concern here for two reasons. First, Plaintiffs *want* BCBST to assess each class member's claim individually, so they themselves seek individual and varying adjudications. Second, because BCBST allows coverage of PBT in "unique clinical circumstances" and involved independent reviewers to assess each member's case at every level, BCBST already provides the individualized assessment that Plaintiffs seek.

Because BCBST's PBT Policy explicitly assesses "unique clinical circumstances" individually, and because each putative class member's claim must be assessed against the other requirements of the particular benefit plan, different courts reaching different results on different class members' claims would not create "incompatible" standards of conduct because each decision would be appropriately unique. Fed. R. Civ. P. 23(b)(1)(A). *Clippinger*'s insistence that courts look past allegedly-uniform policies to examine what actually drives the resolution of each class member's claim confirms that Rule 23(b)(1) certification is inappropriate here.

**D.** *Clippinger* **forecloses certification under Rule 23(b)(2).**

The Sixth Circuit's reasoning in *Clippinger* extends with equal force to preclude certification under Rule 23(b)(2). *Clippinger* instructs that this Court must "forecast how the parties will conduct the litigation" before certifying a class and cannot "certify a class first and ask questions about how the litigation will proceed later." 173 F.4th at 826 (citation omitted). And a Rule 23(b)(2) class is appropriate only when "the party opposing the class has acted or refused to

8

act on grounds that apply generally to the class, so that *final* injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*." Fed. R. Civ. P. 23(b)(2) (emphases added).

*Clippinger* makes clear that this Court cannot overlook the preliminary nature of the injunctive relief that Cumalander seeks and must instead forecast what would happen next if this Court certifies a class. Because individualized determinations are required, an injunction that merely requires BCBST to reprocess claims could not afford any uniform class-wide relief and would instead lead to 74 unwieldy and inefficient mini-trials. *See, e.g.*, *Kartman v. State Farm Mutual Automobile Insurance Co.*, 634 F.3d 883, 886 (7th Cir. 2011) (holding that classwide reprocessing cannot constitute final relief); *Wit*, 79 F.4th at 1084 ("[A] plaintiff [must] sho[w] that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard.").

*Clippinger* also makes clear that BCBST has not acted "on grounds that apply generally to the class" in the sense that Rule 23(b)(2) requires. Yes, BCBST has a medical policy that it used as a guide to assess each class member's claim. But the grounds for each class member's denied claim were not "general"; rather, they involved individualized assessments of each member's "unique clinical circumstances." Thus, Cumalander's putative class cannot meet 23(b)(2)'s "generally applicable" requirement.

**E.      Class certification would violate the Rules Enabling Act by stripping BCBST of its substantive right to apply a unique clinical circumstances assessment to each claim.**

Finally, as in *Clippinger*, the classwide relief that Cumalander seeks would violate the Rules Enabling Act by forcing BCBST to cover claims for PBT without regard to the member's individual circumstances. In *Clippinger*, the district court proposed a damages formula that would have prevented State Farm from presenting vehicle-specific valuation evidence that it had a

contractual and regulatory right to consider. 173 F.4th at 834. The Sixth Circuit held that the application of this formula without State Farm's typical-negotiation adjustment and other vehicle-specific evidence violated the Rules Enabling Act by eliminating State Farm's "substantive right" to present individualized defenses or to rely on its contractual and regulatory rights to an individualized assessment. *Id.*

Cumalander's proposed relief would likewise violate the Rules Enabling Act. Cumalander asks this Court to issue a single, class-wide order "finding that Plaintiff and the proposed Class are entitled to recoupment of benefits due under the BCBST[] plans." Compl. ¶ 116(b). In other words, Cumalander seeks an order requiring BCBST to categorically cover these claims, regardless of the member's individual history, medical records submitted with the claim, or the member's specific plan language. Such an order would violate BCBST's statutory obligation to conduct a "full and fair review of the claim" and "provide for a review that takes into account all comments, documents, records, and other information submitted." 29 C.F.R. § 2560.503-1(h)(2). Cumalander's proposed remedies would also violate BCBST's fiduciary obligation to administer health plans as they are written. *See* 29 U.S.C. § 1104(a)(1)(D) (requiring plan administrators to make benefit decisions in "accordance with the documents and instruments governing the plan").

As in *Clippinger*, this Court would "flout[] the Rules Enabling Act" if it replaced "claim-by-claim proceedings" with a blanket, "Trial by Formula" approach. *Clippinger*, 173 F.4th at 834 (citing *Wal-Mart*, 564 U.S. at 357). Class certification would require the Court to strip BCBST of its substantive rights, under both ERISA and the applicable plan terms.

### III.     CONCLUSION

For the reasons stated in BCBST's opposition brief and as re-emphasized in *Clippinger*, the Court should deny the motion for class certification.

DATED this 19th day of May, 2026.

*s/ Gwendolyn C. Payton*

Marc H. Harwell, BPR #013817
marc@harwelllawgroup.com
HARWELL & HURST PLLC
832 Georgia Avenue, Suite 510
Chattanooga, TN 37402
Telephone: (423) 756-7333

Gwendolyn C. Payton (*appearing pro hac vice*)
gpayton@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Ave., Suite 3700
Seattle, WA 98101
Telephone: (206) 626-7714

Stephanie N. Bedard (*appearing pro hac vice*)
sbedard@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6039

*Counsel for Defendant BlueCross BlueShield of Tennessee, Inc.*

11

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned attorney, do hereby certify that the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF filing system which automatically sends email notifications of such filing to the following attorneys of record:

Norris A. Adams, II
nadams@essexrichards.com
ESSEX RICHARDS, P.A.
1701 South Boulevard
Charlotte, NC 28203
Telephone: (704) 377-4300

Elizabeth K. Green
egreen@greenhealthlaw.com
GREEN HEALTH LAW, APC
201 N. Brand Blvd., Ste 200
Glendale, CA 91203
Telephone: (818) 722-1164

Stephanie A. Casey
scasey@colson.com
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Telephone: (305) 476-7400

Timothy James Rozelle
trozelle@kantorlaw.net
KANTOR & KANTOR, LLP
9301 Corbin Avenue, Suite 1400
Northridge, CA 91324
Telephone: (818) 886-2525

Kaci Garrabrant
kgarrabrant@buchanandisability.com
ERIC BUCHANAN & ASSOCIATES, PLLC
414 McCallie Avenue
Chattanooga, TN 37402
Telephone: (423) 634-2506

This 19th day of May, 2026.

*s/ Gwendolyn C. Payton*
GWENDOLYN C. PAYTON